[No. 1975]

THE LAS VEGAS AND TONOPAH RAILROAD COMPANY (A CORPORATION), RESPONDENT, *v.* W. G. SUMMERFIELD, W. S. JOHNSON, AND C. E. DEANOR, APPELLANTS; E. S. JOHNSON AND BAND GOLDFIELD MINING COMPANY (A CORPORATION), INTERVENERS, RESPONDENTS.

1. EMINENT DOMAIN—PARTIES—INTERVENTION.
    Persons claiming interest in land sought to be condemned, and for that reason claiming an interest in the award made, were expressly authorized to intervene by Stats. 1907, c. 128, sec. 8, providing that all persons in occupation of or having or claiming an interest in any of the property described in the complaint, or in the damages for the taking thereof, though not named, may appear, plead, and defend, each in respect to his own property or interest or that claimed by him, in like manner as if named in the complaint.

2. MINES AND MINERALS—PATENT—RELATION.
    A patent to a mining claim relates back to the original location.

3. MINES AND MINERALS — CONVEYANCE OF SURFACE — RIGHTS OF GRANTEE—EQUITY.
    Grantees of a portion of the surface of a mining claim under mesne conveyances from the original locator are entitled to possession of the surface so conveyed, under the rule that equity will control the patent title in favor of party holding the equitable title.

4. MINES AND MINERALS—CONVEYANCE OF SURFACE—DESCRIPTION.
    Reference to a mining claim as a placer instead of a lode claim, in an agreement for the sale of a portion of the surface, was immaterial where the property was otherwise so described as to leave no doubt as to what was intended.

5. EMINENT DOMAIN—RIGHT TO AWARD—OWNER OF MINING LOCATION.
    The owner of a valid, subsisting, but unpatented, lode mining claim, is entitled to an award for condemnation of a portion of the surface for a railroad right of way.

6. ADVERSE POSSESSION.
    Facts of case considered in reference to title by adverse possession of portion of an unpatented mining claim, majority of court deeming same insufficient.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Peter J. Somers*, Judge.

Condemnation proceedings by Las Vegas and Tonopah Railroad Company against W. G. Summerfield and W.

S. Johnson, doing business as Summerfield & Johnson, and another, in which E. S. Johnson and the Band Goldfield Mining Company intervene. From a judgment distributing an award of damages, W. G. Summerfield and W. S. Johnson appeal. Judgment **affirmed** in so far as it made an award in favor of the Band Goldfield Mining Company, and **reversed** as to intervener E. S. Johnson, with direction to enter judgment in favor of appellants in the sum of $657.

The facts sufficiently appear in the opinion.

*J. F. Dennis* and *Walter Shelton,* for Appellants:

The court had no jurisdiction over the petitions to pro rate, and the issues made thereunder, for the reason that the statutes do not confer such jurisdiction. It appears from the findings of fact that no unknown owners were made defendants; that the petitioners were not made defendants, and that no notice, either actual or construct-ive, was filed or served upon petitioners. It therefore follows that this proceeding was ineffectual to vest the title of petitioners in the railroad company. And if it could not disturb their alleged title, certainly no damage to them would follow. (*Charleston Ry. Co.* v. *Hughes,* 70 Am. St. Rep. 17; *Phillips* v. *Postal Telegraph Co.,* 41 S. E. 1023, 89 Am. St. Rep. 868.)

Section 20 of the eminent domain act provides that "the court may order the money to be apportioned among the defendants, according to the rights of the several parties, as shown by the proofs," etc. In this section it is expressly stated that the court may order the money, which of course is the money paid in under the award, to be apportioned among the defendants according to the rights of the several parties as shown by the proofs. No provision is made in the section last referred to except for such parties as are made defendants to the original action.

In view of the fact that it was within the power of the plaintiff railroad company to make defendants of all parties who might claim an interest in the tract of land

in controversy; and in view of the further fact that the defendants Summerfield & Johnson were the only persons made parties defendant, it follows as a legal result that the plaintiff railroad company decided at its own risk that defendants Summerfield & Johnson were the owners of said property, and by these proceedings acquired only such title as they possessed, and have elected to pay into court, in accordance with said award, the sum of one thousand dollars as compensation for such title as the plaintiff railroad company did acquire through defendants Summerfield & Johnson by reason of said condemnation proceedings, and that any title that might have been the subject of controversy in reference to said award, had the parties asserting the same been made defendants to the original proceedings for condemnation, is now, if it exists at all, wholly and only the subject of an action between the party plaintiff to such condemnation proceeding and the party asserting such title, and cannot in any way affect the award obtained in the original condemnation proceedings, for the reason that the party now asserting such title was not a party defendant to the original controversy.   There is absolutely nothing in the statute which would permit a stranger who has lost no right, and who has no interest in the proceedings, to come into court, after the trouble and expense of litigation has been borne by another, and claim the fruits thereof.    The injustice of such a proceeding is manifest.

Our position is further strengthened by the fact that section 29 makes the civil practice act applicable, but that such practice does not permit any intervention in a case of this kind, or in any other case of a civil nature, after judgment is rendered, without setting aside the judgment or verdict, as the case may be, and opening up the case for a rehearing.

It is nowhere asserted by the petitioners herein that they were damaged in any way by the plaintiff railroad company, and no attempt whatever has been made upon the part of petitioners to prove any damage to its alleged lands or premises.   No proof of damage having been

made, none can be awarded, for the court cannot say that, because Summerfield & Johnson were awarded one thousand dollars, petitioners are entitled to it because the court found they owned the land.

Neither of the mining claims on which respondents base their title to the land in question were patented at the time of the commencement of this action. Consequently neither of respondents had a cause of action against the appellants for the possession of the lots of land upon which the feed stable and corral were situated, for the reason that the latter were in possession of the land for more than two years prior to the commencement of this action (15 Cyc. 1007, par. B), and any subsequently acquired title cannot benefit the respondents. (Stats. 1907, p. 285, sec. 16; Ency. Pl. & Pr., vol. 7, pp. 505, 506, par. 2.)

If it is true that respondents own the mining claims embracing the land on which the livery stable of appellants was situated, it is likewise an admitted fact that appellants, under claim of right so to do, had uninterrupted possession of the land in controversy from January 1, 1905, until January 31, 1910, when the respondents filed their petitions to pro rate in this case—a period of over five years—and they were estopped from denying our title. (15 Cyc. 863, and authorities cited.)

*C. O. Whittemore*, for Respondent Plaintiff:

The plaintiff has deposited in court the amount awarded by the commissioners as the value of the property sought to be condemned, and for the damages which will accrue to the portion not sought to be condemned, by reason of the construction of the proposed improvements. Its only interest now is that the amount so deposited shall go to the parties entitled thereto, *i. e.*, the owners of the property.

*D. H. Kehoe*, for Intervener E. S. Johnson:

The commissioners in condemnation proceedings have no authority or power other than to fix the value of the

land condemned; a trial is had, and proofs of ownership made before the court, as was done in this case, and the court determines to whom the land taken belongs. The court found in this case that the land did not belong to the appellants Summerfield & Johnson, but did find that it belonged to respondent E. S. Johnson, and thereupon decreed $657 to him, for the very good reason that he was the legal owner of the land for which the award was made, and therefore entitled to his share of the award.

E. S. Johnson became a party to this action before the trial took place before the court, by filing his petition in intervention, and serving the same on appellants.

Any person shall be entitled to intervene who has an interest in the matter in litigation. (Comp. Laws, 3694.) A third person may intervene either before or after issue has been joined in the cause. (Comp. Laws, 3695.) The intervention must be by petition or complaint filed with the court in which the action is pending. (Comp. Laws, 3696.)

Respondent has fully complied with the sections of the statute cited and with section 20 of the act of 1907.

Section 23 of the act of 1907 provides for the distribution of the award to those entitled thereto, and the court found that E. S. Johnson, petitioner and intervener, was entitled to the sum of $657 of the award, and so decreed.

The question presented to the trial court in this case was who was the owner of the land described in the complaint, and who was entitled to receive the award made by the commission as the value of the land. The act of 1907 does not vest authority in the commission to decide who is the legal owner of the land condemned, or to decide to whom the award made belongs, and as the only authority vested in the commission is to hear the evidence and on the evidence to find the value of the land condemned, it then becomes the duty of the court, after the report of the commission is returned, to try the case and render its judgment in favor of the party or parties who

prove their title to the land taken, as was done in this case.

*Detch & Carney,* for Intervener Band Goldfield Mining Company:

The only attempt on the part of appellants to show ownership of the ground in dispute, is the testimony of Mr. Summerfield that Summerfield & Johnson were in possession of the premises from the 1st day of January, 1905, up to the time of the commencement of condemnation proceedings.

We know of no law, and appellants cite none, which would give to them any legal or equitable ownership of the premises in dispute. Had appellants, at the time they went into possession of these premises, investigated the situation concerning the same they would have ascertained that there was existing at that time a valid and subsisting lode location; they failed to do this and the doctrine of *caveat emptor* applies, and we claim that whatever improvements they placed upon these premises are now the property of the respondent Band Goldfield Mining Company, and that they have absolutely no right to any portion of the award made by the commissioners in the proceedings brought to condemn these premises.

The record of the condemnation proceeding shows that the land in controversy was damaged, and being the record owners of said land, the presumption naturally follows that they were in the occupancy of same. At any rate, appellants, being trespassers, are not in a position to dispute our title.

By the Court, NORCROSS, J., dissenting in part:

This is a proceeding brought by the plaintiff under the provisions of "An act to regulate the exercise of the right of eminent domain" (Stats. 1907, p. 279) to condemn a right of way for its railroad across a certain tract of land in the town of Columbia, Esmeralda County, occupied and used by the defendants as a feed corral in

connection with what was known as the branch Pioneer
Livery Stable.    As provided by the act, commissioners
were appointed to assess the damages, and the commis-
sion rendered a report awarding the defendant C. E.
Deanor the sum of $1,000, and Summerfield & Johnson
$500.    C. E. Deanor, who was the lessee of Summerfield
& Johnson of the stable and corral, accepted the award
in his favor which was paid by plaintiff.    Summerfield
& Johnson objected to the award made to them, and
there was a further submission of the question of their
damages and a subsequent award of $1,000 to them,
provided that they establish their title to said property.

The plaintiff paid into court the sum of $1,000 subject
to the provisions of the award.    Subsequent to the
award last mentioned, and on January 31 and March 4,
1910, respectively, the Band Goldfield Mining Company
and E. S. Johnson severally intervened, and alleged
ownership, respectively, of the Yellow Rose quartz min-
ing claim and the Sleepy Hollow mining claim, upon
which claims the right of way sought to be condemned
in the action was located, and prayed that the entire
award be decreed to them in proportion to the area of
their respective claims affected.    The defendants Sum-
merfield & Johnson objected to the jurisdiction of the
court to entertain the petitions in intervention, which
objection was overruled.    They also filed answers to
the petitions denying ownership in petitioners, alleging
ownership in themselves by purchase from their grant-
ors and predecessors in interest, and also setting up a
right of possession under the statute of limitations.
Prior to the trial of the issues between defendants and
interveners, and on the 23d day of April, 1910, a stipula-
tion was entered in the minutes of the court between the
plaintiff, defendants, and interveners "that the report of
the commissioners be confirmed, and that the different
claimants to the fund of $1,000 may continue the
litigation as to ownership of said fund or any part of it
without holding the Las Vegas and Tonopah Railroad

Company responsible for any more or further sum than the said $1,000 or further costs." The court found the interveners to be the owners of the property for which the award in damages was made, and rendered several judgments in favor of the said E. S. Johnson in the sum of $657, and the said Band Goldfield Mining Company in the sum of $343.

From the judgments and from orders denying motions for a new trial defendants have appealed.

[1] The contention that the trial court was without jurisdiction to permit the interventions is, we think, without merit. Section 8 of said act of 1907, *supra,* provides: "All persons in occupation of, or having or claiming an interest in, any of the property described in the complaint, or in the damages for the taking thereof, though not named, may appear, plead, and defend, each in respect to his own property or interest, or that claimed by him, in like manner as if named in the complaint." This section clearly authorizes any person interested either in the property or the award to intervene and assert his rights. Whether such an intervention ought to be permitted at a time subsequent to the award by the commissioners by a party not named in the complaint, and whose rights would not, therefore, be affected by the award and judgment, we need not now consider. Permission at such a time might be erroneous, but, if error at all, it is an error within, and not in excess of, jurisdiction. However that may be, the stipulation entered in the minutes of the court and quoted *supra* we think amounts to a waiver of any objection that may have been otherwise well taken.

Upon the merits, we think the court erred in determining that the defendants were not entitled to any portion whatever of the award, and in rendering judgment in favor of interveners for the total amount thereof. The interveners neither alleged or proved any damages to themselves other than might be held to follow from a bare allegation and proof of ownership of the two mining claims in question. Doubtless the main element

of damage considered by the commissioners was the injury to the corral and stable owned by the defendants, the lessee of whom was deemed to have been damaged to the extent of $1,000 for the injury to his business. The said lessee was paying defendants $85 per month rental.

The defendants and the intervener, E. S. Johnson, assert title from the same original source as shown by the following: June 3, 1903, W. H. Harris located the Wild Cat quartz lode claim, the certificate of location of which was recorded in Book J, p. 171, Records of Esmeralda County. October 19, 1903, W. H. Harris located the Yellow Rose claim. April 20, 1904, W. H. Harris entered into the following agreement with W. A. Marsh and E. C. Courtney: "That the party of the first part (W. H. Harris) in consideration of the sum of $100, United States gold coin, paid to him, hereby agree that the party of the second part, may occupy and use the surface of a certain tract of land situated on the north side of Columbia townsite and known as the corral situated on the Yellow Rose Placer claim. Said tract of land is (184) feet fronting on Main Street, in the town of Columbia, and (200) feet deep toward Columbia Mountain. And further agree to give the said second party, a deed to such ground, so soon as he obtains patent to the mining claim on which said tract is situated." July 11, 1904, W. A. Marsh and E. C. Courtney executed a quitclaim deed to W. J. Sinclair of property described as follows: "One corral situated in the town of Columbia on the Yellow Rose placer claim, said tract of ground is 184 feet fronting on Main Street, and 200 feet deep toward Columbia Mountain." December 31, 1904, W. J. Sinclair and wife executed a quitclaim deed to defendants Summerfield and Johnson of property described as follows: "Fronting 184 feet on Main Street, 200 feet deep from the north side of said street, commonly known and designated as the branch Pioneer Livery Stable." June 24, 1904, W. H. Harris deeded to John E. Lutz certain mining premises described as " 'Wild Cat' placer mining claim, the location certificate of which is duly of

record in the office of the county recorder at Book J, p. 171, especially reserving and excepting from this conveyance the surface rights only of a strip of land 184 feet in length, more or less, and 175 feet in width, more or less, along the southerly end of the said 'Wild Cat' placer, which has heretofore been leased by the grantor herein to William A. Marsh and E. C. Courtney for a corral, and which is now enclosed by a wire fence. Also all those certain lode mining claims situated in said Goldfield Mining District, known, located and recorded as the 'Granite' and 'Yellow Rose' lode mining claims." February 15, 1905, deed from John E. Lutz to E. S. Johnson of Yellow Rose lode mining claim, also Granite, White Rose, and Pink Rose lode mining claims, containing the following reservation: "Especially reserving herefrom all that portion of the surface rights of the south 800 feet of the said Yellow Rose mining claim, leased or sold by the party of the first part prior to the date hereof; and the party of the first part, for the consideration hereinabove mentioned, does hereby sell, assign and transfer said leases and contracts, together with all covenants, rights and interest of party of first part therein, unto the party of the second part, his heirs or assigns." February 27, 1908, patent of the United States to E. S. Johnson for Yellow Rose lode mining claim.

[2] The patent obtained by intervener E. S. Johnson relates back to the original location of the Yellow Rose claim made by W. H. Harris on October 19, 1903. (Lindley on Mines, 2d ed. sec. 783.)

[3] The defendants, their grantors and predecessors in interest, holding possession of a portion of the surface of the Yellow Rose claim, under mesne conveyances from the original locator, W. H. Harris, are entitled to possession of the portion of the claim in controversy, for "equity will control the patent title in favor of the party holding the equitable title." (Lindley on Mines, 2d ed. sec. 719.)

[4] The fact that the Yellow Rose claim is described as a placer instead of a lode claim in the agreement between Harris, Marsh, and Courtney of date April 20, 1904, we think is immaterial, for the property is otherwise so described as to leave no doubt as to what was intended. In the conveyance from Harris to Lutz of June 24, 1904, the Wild Cat claim is described also as a placer, although the certificate of location referred to shows it to have been located as a lode claim. We think the intervener, E. S. Johnson, is entitled to no portion of the award.

[5, 6] The right of the Band Goldfield Mining Company to a portion of the award rests upon the fact that at the time of intervention it was the owner of the Sleepy Hollow lode mining claim, an unpatented but valid and subsisting claim located on December 1, 1903, subject to whatever legal rights defendants may be entitled to by reason of the claim of adverse possession. Contrary to my own views of the question, my associates are of the opinion that, as to the Sleepy Hollow mining claim, the defendants have not established an adverse possession, and are not entitled to the amount of the award which the judgment gave to the Band Goldfield Mining Company.

The judgment in favor of the Band Goldfield Mining Company is affirmed.

The judgment in favor of E. S. Johnson is reversed, and the court below is directed to enter judgment in favor of the appellants in the sum of $657.

It is so ordered.