THE STATE OF NEVADA, ON RELATION OF ITS
DEPARTMENT OF HIGHWAYS, RESPONDENT, *v.*
VICTOR A. PINSON, ET AL., APPELLANTS.

No. 3546

June 30, 1949.                              207 P.2d 1105.

See, also: 65 Nev. 510, 199 P.2d 631; 66 Nev.

*Carville & Carville*, of Reno, for Appellants.

*Alan Bible*, Attorney General, *Geo. P. Annand* and *Homer Mooney*, Deputy Attorneys General, for Respondent.

## OPINION

By the Court, BADT, J.:

This is an appeal by condemnees from a condemnation judgment and order and from the order denying a new trial. Appellants assert a total failure of proof to support the judgment, both as to the necessity for the taking and as to the compensation. They also contend that they have been deprived of their property without due process of law and without just compensation.

The property condemned, as well as the parcel severed, comprised portions of lands that had been owned by the Pinson family for a great many years and operated by them as a cattle ranch. Portions of the property had already been condemned for a right of way for the Southern Pacific Railroad and later by the Western Pacific Railroad. The present condemnation results in a third taking for a secondary highway connecting with the main highway known as U S 40. The Pinsons, strenuously objecting because the taking and the severance both resulted in serious curtailment of their cattle operation, a contention not disputed by the state, insisted that there was no necessity for the taking, as the road could skirt their property along the line of the present county road which coincided with an alternate survey

proposed by them for the alignment for this secondary highway. The suggestion of this alternate route is the subject of most of the testimony taken concerning the necessity for the taking and is the basis of the main contention of appellants that the necessity for the condemnation does not appear.

The desire of the appellants " to be let alone" so that they might continue their livestock operations without interference as they and their family have done for at least two generations, in their continued engagement in one of the major industries of this state, evokes the sympathetic consideration of this court. These considerations, however, must give way to the wheels of progress if constitutional guarantees for just compensation and statutory requirements have been met.

Appellants contend that the condemnation of the route through their property grows out of "convenience," "feasibility," "economy of construction and maintenance" and not out of "necessity." It is true that we find these and similar expressions constantly in the mouths of the state and federal engineers who testified, and it is likewise true that none of these witnesses used the terms "necessary" or "necessity" in their testimony. We do find, however, ample testimony that the alternative route suggested by appellants (the only alternate brought into the case) failed of approval by the state and federal authorities on account of its lack of "highway safety." The condemned route "offers greater safety to the traveling public." The proposed alternate route had "excessive grades," grades up to about 8 percent, and had a "considerable angle in it," and "sharper curvatures," a minimum radius of 1,000 feet as against the minimum radius of 3,000 feet on the condemned route. The grades on the condemned route did not exceed 4 percent. The proposed alternate was disapproved, among other things, "in view of the fact of highway safety." It would have permitted "poorer vision" and would have been "extra hazardous." It

would be unsafe except at greatly restricted speeds. Mr. Pinson's engineer, testifying in support of the alternate route, found there is in one place a 7½ percent grade and that to keep it at 6 percent or under, a cut of approximately 38 feet at the summit would be necessary.

The foregoing examples of the testimony of the state's expert witnesses are sufficient to indicate that the trial court was justified in its finding that the taking was necessary. We may for the purpose of this decision disregard the additional grounds of convenience, feasibility and economy. Nor do we need to indulge the presumption that the most suitable and available location was taken. 29 C.J.S., Eminent Domain. sec. 269, p. 1250. Or the presumption that the location made by the authorities is necessary and desirable in the light of the subordination of private right to the public good. 18 Am.Jur. 731, Eminent Domain, sec. 105 et seq. We agree with respondent that the word "necessity" as used in the statute does not mean an absolute and unconditional necessity as determined by physical causes. If this were so, the purpose of the statute might well be defeated in the great majority of condemnation suits. The word "necessity" must be deemed to mean a reasonable necessity under all of the circumstances of the particular case. State v. Superior Court, 107 Wash. 228, 181 P. 689; Samish River Co. v. Union Boom Co., 32 Wash. 586, 73 P. 670. The court found that the route in question was designated as route 18 by chapter 174, Statutes of Nevada 1945, being federal aid secondary road No. 613, project No. S. 613, from federal aid route 1 (U S 40), approximately three miles southeast of Golconda, northeasterly to a junction with Getchell Mine road, approved by the public road commission, March 4, 1946; that the taking was necessary for said highway for the use of the public, and that the location was so made as to be most compatible with the greatest public good and the least private injury; that the use

was a public one and the taking necessary; that the board of county commissioners of Humboldt County, before the filing of the present complaint, adopted a resolution approving the changes in the routing of this section of state route 18 as submitted to said board by the state highway department. These findings as to the performance of the acts of official approval are not controverted by appellants except by certain denials on information and belief. The action of the county commissioners is assailed by appellants for the reason that appellants were not notified of the proposed meeting at which the action was taken. Such attack, however, is made in connection with the claimed absence of due process, which is briefly discussed later. The compelling reason behind the court's approval of the route chosen by the engineers of the state and the federal government is simply this. There was only one other reasonably possible route, the alternate route suggested by appellants. But that proposed alternate route was not safe. True, the proposed highway was a "farm and mine to market road" and not a main highway, but the necessity for the safe road cannot be belittled because only one life a year may be saved rather than a hundred.

Appellants likewise contend that the award to them is insufficient, and that the record is devoid of proof to sustain it. Appellants are the owners of section 16, T. 36 N., R. 41 E., M.D.M. This section is literally cut in two in a northerly and southerly direction by the new highway. A few acres are likewise severed from section 21 lying immediately to the south. This severed portion is for the most part sagebrush land and was used by the Pinson family in their livestock operations for holding cattle in the spring at a time when they must be removed from the meadows on the Humboldt river and which is yet too early for turning out on the public domain under regulations of the Department of the Interior. It contains some high ground which it is necessary to use in times of flood conditions. Its main use

appears to be in fall when the cattle come off the higher ranges and the enclosed field is used for holding, classifying and segregating the livestock in the methods familiar to all cattlemen. There is no doubt but that the severance works not only a hardship but a definite and distinct detriment and damage to appellants in connection with their livestock operations. They also express a perhaps well-grounded fear that more of their cattle will be struck by cars and trucks on the highway, and more will be subject to depredations by "cattle rustlers."[1] They discount any benefit that would result from constructing one or more underpasses under the highway to permit the passage of the cattle back and forth from the severed half section to other portions of their property and to two watering places where the livestock water. They assert that the severed half section becomes worthless to them by reason of its severance and claim their damage in the sum of $7,500. The state and the district court accepted the proposition that the severed land would be useless to appellants, and respondent's witnesses fixed a top valuation of $3 an acre for the severance, plus $7 an acre for the land actually taken for the highway. Adjoining lands of similar character could be purchased for $1.25 an acre. Some restricted use can still be made by appellants of the severed 317.8 acres. Provision was made by the court for the construction of fences and gates, as well as for an additional road to the ranch house of appellants. The court allowed $5 an acre for the land severed ($1,589) and $10 an acre for the land taken ($174.47). No purpose

---

[1] This is not the typical "cattle rustling" of the old days. There is no "running" of a brand with a hot cinch ring on a "slick-ear" calf or altering the brand on a steer while the cow pony "sits back" on the rope. There is no driving of a bunch into the "bad lands" or into some hidden canyon to await an opportune time to be driven to a far market across the state line. Modern cattle rustling consists of a quick kill with a rifleshot and the hauling off of the carcass in a light truck. Losses from this source have been considerable. Thus, in accord with the times, the man with a fast horse and a long rope has given way to the man with a fast truck and a good rifle.

would be served in reviewing the testimony of the parties as to values.

■ ■ All proper elements offered by any of the parties were apparently taken into consideration, and the findings as to value and damage find ample support in the evidence. We are, in effect, asked to say that the trial court was in error in accepting the testimony of respondent's witnesses rather than the testimony of appellants and their witnesses. This we cannot do. Friendly v. Larsen, 62 Nev. 135, 144 P.2d 747.

■ Counsel assert error in the fixing of the value of the land as of the date of the trial in place of the date of the summons as required by statute. The complaint was filed and summons issued October 27, 1947, and the trial of the issue of just compensation had February 17, 1948, less than four months later. There is nothing in the case to indicate any possible change of value during this brief period. Photographs received in evidence present the land as typical sagebrush land. Counsel for appellants, on objecting to testimony as to value during periods claimed to be too remote, insisted: "We want to determine the value of the land now," and when the state offered in evidence certain deeds executed in 1945 again insisted: "The time to be determined is now, the value of the land today." Appellants did not insist that the value to be fixed was that of four months earlier, namely, the date of the summons. Testimony as to values ranged from $1 and $2 per acre through $3, $15, $17.50, $20 to $30 an acre. The finding of the court on such evidence will not be disturbed by us under the circumstances. Friendly v. Larsen, 62 Nev. 135, 144 P.2d 747.

■ At the time of the filing of plaintiff's complaint an order of immediate occupancy was entered by the court upon plaintiff's motion. It is asserted by appellants that the judgment must be reversed because interest from the date of the order of immediate occupancy was not allowed. Such interest would have amounted to less

than $50. Remarks made by the learned district judge in the course of the trial indicate that he considered this item absorbed in the judgment and in certain benefits derived by appellants, and that as a matter of fact the appellants' use of the land was not seriously interrupted by the order for immediate occupancy. We are not disposed to disturb the judgment by reason of the point raised, although the allowance of interest is undoubtedly proper if not balanced or offset by other items.

██ Appellants contend that at the second hearing, called for the purpose of fixing compensation, the court erred in not permitting them to introduce further evidence to the effect that the taking was not necessary. A formal offer of evidence was made with the ostensible purpose of showing that ranchers and stockmen to be served by the road were few in number and that mining operations to be served could not be considered permanent. The matter was largely in the court's discretion. While we have not reviewed the evidence as to the extent of the use of the road, we may note here that it included testimony of counts and tabulations made at various times of the numbers of cars and trucks using this road. It is clear to this court, after a consideration of all of the evidence in the case that even if the evidence had been admitted, it would not have changed the decision, the findings or the conclusion of the trial court. If there was any error in rejecting this testimony, we do not consider the same prejudicial. At the conclusion of the testimony at the first hearing on the questions of necessity for the taking and the application for an order for immediate occupancy, counsel for appellants stated: "Of course if the court finds, or gives them permission to make the survey and advertise, of course that settles it so far as where the route will go, and of course the matter of damages comes up."

██ After respondent had proved the necessity for the taking, the district court ruled that the burden of proving the value of the land taken and the damage

resulting from the severance was upon appellants. The decisions of the various courts of last resort in the United States are hopelessly in conflict as to the question of where lies the burden of proof. See 20 C.J. 982, Eminent Domain, sec. 386; 29 C.J.S., Eminent Domain, sec. 271, p. 1256; Ann.Cas.1916D, 958, note; 18 Am.Jur. 985; Eminent Domain, sec. 342. Much of the conflict results from the particular statutory provisions in question. In this state eminent domain proceedings are governed by secs. 9153–9176 inc., Nevada Compiled Laws 1929, as amended. The question arises in the present case through the motion made by the appellants for a dismissal of the respondent's case after the respondent had proved the necessity for the taking and rested. Appellants insist that at such stage of the proceedings no judgment could have been rendered—there being no proof as to the value of the land taken or as to damages to the appellants by reason of the severance. We are disposed to follow in this state the rule established in what we think is the majority of the decisions, that the burden of proof (once the necessity for the taking has been proved by the condemnor) is upon the condemnee or landowner to prove the value of the land taken and also the damage resulting to other lands of the landowner by reason of the severance. Such rule is, we think, contemplated by our statutes. The taking of land for the purposes of public roads is expressly authorized by N.C.L. sec. 9153. A complaint for condemnation is required by sec. 9159 to state only the name of the court, the names of the parties and a statement of the right of plaintiff, and must be accompanied by a map (if a right of way be sought) showing its location, route and termini, and a description of the land to be taken. No allegation of value or of damage is required. That the parties are not strictly plaintiff and defendant in such a proceeding is indicated by the requirements of sec. 9159 that the person in charge of the public use for

which the property is sought must be "styled" plaintiff and the owners, occupants and claimants of the property must be "styled" defendants. Under sec. 9160 interested parties, though not named as defendant, "may appear, plead, and defend, each in respect to his own property or interest, or that claimed by him, in like manner as if named in the complaint." It is significant that sec. 9156, N.C.L. provides that "before property can be taken it must appear: 1. That the use to which it is to be applied is a use authorized by law. 2. That the taking is necessary to such use." Subdivision 3 is not applicable. The necessity for proof of value and damage is not in this section listed among the conditions precedent to condemnation. Section 9163, N.C.L. provides: "The court, jury, commissioners, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess" the value of the property taken, the damages resulting from a severance and also the benefits accruing to the defendants. Section 9171 makes the Civil Practice Act applicable to condemnation proceedings.

In Las Vegas & Tonopah R. R. v. Summerfield et al., 35 Nev. 229, 129 P. 303, 304, a condemnation case, one E. S. Johnson, among other claimants to the property, intervened and the district court awarded damages to the interveners. In reversing the judgment in favor of E. S. Johnson, this court said: "The interveners neither alleged nor proved any damages to themselves other than might be held to follow from a bare allegation and proof of ownership of the two mining claims in question." This was directly responsive to the contention raised by appellants Summerfield & Johnson that "no proof of damage having been made, [by intervener E. S. Johnson] none can be awarded. * * * " We accordingly find in this case and in our statutes above quoted support for the adoption of the rule in this state that the burden of proof, both as to the value of

the land taken and as to the accruing damage to other lands growing out of the severance, is upon the landowner. The burden of proof as to benefits accruing to the landowner is naturally upon the condemnor. In this view of the situation it becomes unnecessary to discuss the many authorities cited by both parties. It may be noted that some of the courts in placing the burden of proof of damages upon the landowner appear rather to consider this a privilege to him, as giving him the right to open and close. As was said by the court in Kansas City, etc., Railway v. Haake, 331 Mo. 429, 53 S.W.2d 891, 895, 84 A.L.R. 1477: "We will also say that the court properly permitted the defendant to open and close the case, thereby assuming the burden of proving the amount of his damages." In the present case when the question was raised, the trial court said: "Now it doesn't make a great deal of difference after all, it is the opening and closing, that is just about the difference it makes. I am sure that both sides will be given every opportunity. * * * "

■ Appellants' contention that they were deprived of their property without due process is disposed of by the case of Schrader v. District Court, 58 Nev. 188, 73 P.2d 493. The record of the service of complaint and summons and the appearance of the defendants and the trial of the issues in the instant case bring it clearly within the simple requirements of the Schrader case to show due process.

■ Error is assigned in the failure of the court to find the "market value" of the land. Assuming for the sake of argument that such a finding should have been made, it was not called to the court's attention either on appellant's proposed modification of the findings or their motion for new trial, and such finding, if necessary, will now be implied. Dutertre v. Shallenberger, 21 Nev. 507, 34 P. 449.

The briefs are somewhat voluminous and other points have been discussed and authorities cited. We have

given them all due consideration, but do not feel that further discussion is justified.

The judgment and order denying the motion for new trial are hereby affirmed. Inasmuch as the questions involved in the appeal are of a public nature and of public moment, no costs will be awarded. McBroom v. City of Flint, 266 Mich. 679, 254 N.W. 468; Samuels v. Couzens, 222 Mich. 604, 193 N.W. 212; 20 C.J.S., Costs, sec. 292 P. 540. See, also, Agricultural Insurance Company of Watertown v. Biltz, 57 Nev. 389, 64 P.2d 568.

HORSEY, C. J., and EATHER, J., concur.