ANTHONY "TONY" BARKER, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 9879

May 9, 1979                              594 P.2d 719

*Mills, Galliher, Lukens, Gibson & Schwartzer,* Las Vegas, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *George E. Holt,* District Attorney, and *Alan R. Jones,* Special Prosecutor, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, C. J.:

A jury found the appellant, Anthony "Tony" Barker, guilty of murder in the first degree. He seeks a new trial on the grounds that the court below erred: in denying his motion for a new trial grounded on juror misconduct; in ruling on the admissibility of the prior testimony of an unavailable witness; in permitting the state to endorse an additional witness named

in the deposition; and in admitting the out-of-court statements of a co-conspirator, Jerry Bishop, in violation of Barker's Sixth Amendment right of confrontation.

Barker has not challenged the sufficiency of the evidence. Therefore, a detailed presentation of the evidence is not set forth. In brief, the state sought to prove a conspiracy, involving Barker and a Jerry Bishop, to murder Barker's wife and share the proceeds of her insurance policies.[1]

## THE MOTION FOR A NEW TRIAL

Appellant's motion for a new trial was predicated upon the affidavits of seven jurors. They averred that the jury foreman had told them of certain research, conducted by him during the course of the trial, regarding the effect of heroin upon the human mind. The court struck those portions of the affidavits dealing with the effect of the statements upon the deliberations. The court took the testimony of the foreman, who admitted reading such material during the trial, and reporting to the jury:

> that opiates in and of themselves are non-toxic to the human body. That there is no long-lasting physiological or psychological effect resulting from their use in and of themselves. That oftentimes there are other factors associated with it that result from other things or that precipitate the use in the first place, but in and of themselves they are non-toxic.

In a carefully reasoned decision, the court concluded that the statement was made as reported by the foreman, that there had been juror misconduct, but that the error was harmless beyond a reasonable doubt. We agree.

1. *Competence of Jurors' Evidence.*

The state first contends that the order of the trial court should be upheld on the ground that there was no competent evidence of juror misconduct, relying on the proposition "firmly established in Nevada law . . . prohibiting jurors from impeaching their verdict." This contention is meritless.

All of the Nevada authority cited by the state precedes the adoption by the legislature, in 1971, of NRS 50.065, subd. 2, which provides:

---

[1]Bishop stands convicted of murder. *See* Bishop v. State, 91 Nev. 465, 537 P.2d 1202 (1975), and the state in the instant case presented evidence to show that Barker had hired Bishop to participate in the killing.

> Upon an inquiry into the validity of a verdict or indictment:
>
> (a) A juror shall not testify concerning the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith.

Read together with NRS 48.025, adopted at the same time, which provides that all relevant evidence is admissible unless excluded by statute or by the Constitution, the statute does allow juror testimony regarding objective facts, or overt conduct, which constitutes juror misconduct.

The rule is substantially the same as that proposed by the Federal Advisory Committee in 1969. 46 F.R.D. 161, at 289–90. In its published notes, the Committee observed: "The familiar rubric that a juror may not impeach his verdict, dating from Lord Mansfield's time, is a gross oversimplification." *Id.* at 290. ( *See* McNally v. Walkowski, 85 Nev. 696, 462 P.2d 1016 (1969)). The Committee continued "The jurors are the persons who know what really happened. *Allowing them to testify* as to matters other than their own inner reactions involves no particular hazard to the values sought to be protected [by the prohibition of juror testimony]. The rule is based upon this conclusion." 46 F.R.D. at 291. (Emphasis added.)

In this case, the court excluded from its consideration those portions of the affidavits which did deal with "mental processes" or the "effect" upon jurors of the alleged misconduct. The court did rely upon those portions of the affidavits and the testimony dealing with the conduct, and the statements to the jury, of the foreman. These were objective facts, overt and capable of ascertainment by any observer, without regard to the state of mind of any juror. The court, therefore, proceeded properly under the rule. *See* Gardner v. Malone, 376 P.2d 651 (Wash. 1962). *See generally,* Mattox v. United States, 146 U.S. 140, 148–49 (1892).

    2. *Misconduct.*

The state next contends that the juror's conduct in this case was not improper. We do not agree. The unsworn testimony of a juror as to a fact which is relevant to the determination of an issue before the jury constitutes misconduct in itself. Halverson v. Anderson, 513 P.2d 827 (Wash. 1973). Even more is there misconduct when the juror has "researched" such facts, even though not directly related to the specific circumstances which are the subject matter of the trial. *See* Thomas v. Kansas Power

and Light Company, 340 P.2d 379 (Kan. 1959) (reading general information on electricity); Walter v. Ayvazian, 25 P.2d 526 (Cal.App. 1933) (asking general questions of a physician).

The reasons for such a rule are clear. "[F]or a jury to consider independent facts, unsifted as to their accuracy by cross-examination, and unsupported by the solemnity attending their presentation on oath, before a judge, jury, parties and bystanders, and without an opportunity to contradict or explain them can never be countenanced." Thomas v. Kansas Power and Light Company, *supra,* 340 P.2d at 385. Moreover, presentation of facts by a juror must always raise the constitutional issue of the right of a defendant to be present and confront the witnesses against him. *See* State v. Arney, 544 P.2d 334 (Kan. 1975).

3.   *Prejudice.*

The court's decision to deny appellant's motion for a new trial turned upon the court's determination, after careful consideration of the evidence regarding the misconduct, in light of the whole of the evidence produced at trial, that there was, beyond a reasonable doubt, no prejudice to the appellant as a result of the misconduct.

Not every incidence of juror misconduct requires the granting of a motion for new trial. Courts which have considered the issue in light of Chapman v. California, 386 U.S. 18 (1967), have held that the proper standard to be applied—in light of the confrontation clause and due process implications of juror misconduct—is that a new trial must be granted unless it appears, beyond a reasonable doubt, that no prejudice has resulted. *E.g.,* United States v. Welch, 496 F.2d 861 (4th Cir.), *cert. denied,* 419 U.S. 857 (1974); State v. Arney, *supra;* People v. Phillips, 384 N.Y.S.2d 906 (N.Y.Sup. Ct. 1975).

In the case at hand, the court below applied the *Chapman* standard, and concluded that no prejudice had resulted. Such a determination is ultimately a question of fact. "It is for the trial court to determine in the first instance whether misconduct on the part of the jury has resulted in prejudice to a litigant, and its judgment thereon will not be overturned unless abuse of discretion is manifest." Geo. C. Christopher & Sons, Inc. v. Kansas P. & C. Co., Inc., 523 P.2d 709, 720 (Kan. 1974). *See* Ryan v. Westgard, 530 P.2d 687 (Wash.App. 1975).

Here the conduct related to the issue of the credibility of a

prosecution witness. The defense had developed, during cross-examination, that the witness had been addicted to heroin, "on and off" for some twenty years. Further defense questions, however, went to the economic or physical effect of such addiction upon the *motives* of the witness for lying, rather than to any direct psychological or physiological effect upon the mind of an addict. The statement made (which the trial court found to be that contained in the foreman's testimony) had little direct bearing on the issue of general credibility of a narcotics user. In considering the potential effect of the statement, in relation to the mass of evidence produced at trial, the court was justified in concluding that it could not have affected the juror's verdict. The court did not err in denying the motion for a new trial.

## THE ADMISSIBILITY OF THE UNAVAILABLE WITNESS' TESTIMONY

### 1. *Preliminary Hearing Testimony.*

After a hearing the trial court determined to admit the testimony of prosecution witness Keeler, given at the preliminary examination. The court concluded that (a) the defendant had been present and represented by counsel, (b) the witness had been cross-examined by defendant's counsel, and (c) the witness was actually unavailable, despite the state's pre-trial efforts to locate her. Appellant does not challenge the court's determination in this regard. *See* NRS 171.198(7)(b); Drummond v. State, 86 Nev. 4, 462 P.2d 1012 (1970). Instead, appellant contends that the testimony should have been excluded on the ground that its prejudicial effect outweighed its relevance. Appellant has not demonstrated any abuse of discretion in this regard (*see* Bishop v. State, 92 Nev. 510, 521, 554 P.2d 266 (1976)), and we therefore refuse to entertain this challenge, unsupported by any relevant authority. Leaders v. State, 92 Nev. 250, 548 P.2d 1374 (1976); Carson v. Sheriff, 87 Nev. 357, 487 P.2d 334 (1971).

### 2. *Prior Trial Testimony.*

Upon the court's ruling that it would admit Keeler's preliminary hearing testimony, defense counsel indicated their intent to move for the admission of the witness' testimony from *the prior trial of Bishop* regarding her use of drugs.

The court below denied the motion which appellant now claims was prejudicial error. The transcript of the testimony of witness Keeler given at the earlier Bishop trial is not included in the record on this appeal; neither was a previous offer of proof

submitted. Therefore, we are unable to evaluate the significance of her earlier Bishop trial testimony when compared to the preliminary hearing testimony given by Keeler in the instant case. For this reason, we find the assignment of error meritless since we are not in a position to review it.

## THE ENDORSEMENT OF THE WITNESS' NAME ON THE INFORMATION

Appellant suggests that the trial court committed reversible error by permitting the special prosecutor to endorse the name of an additional witness, Victor Trapani, upon the information during the course of the trial.

The court found, based on substantial evidence, that the special prosecutor did not know of the witness' testimony prior to trial. The prosecutor did not learn of the testimony until the evening before the motion was presented to the court. The court simultaneously granted defense counsels' motion for a continuance, of the duration they requested, and further required the district attorney's office to make available to the defense any information regarding the witness in their files. Under these circumstances, we find no abuse of discretion on the part of the trial court. NRS 173.045(2). Hess v. State, 73 Nev. 175, 313 P.2d 432 (1957); State v. Teeter, 65 Nev. 584, 200 P.2d 657 (1948); State v. Monahan, 50 Nev. 27, 249 P. 566 (1926).

## THE OUT-OF-COURT STATEMENTS

Appellant challenges the admission of the testimony of one Delmer Allen, regarding statements allegedly made to Allen by Bishop, which implicated Bishop and appellant in the murder of appellant's wife, on the ground that his Sixth Amendment right to confront the witnesses against him was violated.[2] Appellant does not challenge the trial court's determination that sufficient substantial evidence of a conspiracy between Barker and Bishop existed to allow admission of the statements under NRS 51.035(3)(e). See Goldsmith v. Sheriff, 85 Nev. 295, 454 P.2d 86 (1969); United States v. Nixon, 418 U.S. 683, 701 (1974).

---

[2]Bishop refused to testify at trial, all parties acknowledging the futility of pursuing the issue of a contempt citation with a man serving sentence under conviction of murder. The validity of his refusal, as opposed to the fact, does not in any case affect the issue presented here. See Douglas v. Alabama, 380 U.S. 415, 420 (1965).

In response to appellant's argument, respondent claims that this issue was disposed of by the denial of appellant's pre-trial petition for habeas corpus. Barker v. Sheriff, 90 Nev. 460, 529 P.2d 204 (1974). Not so. The only reference in that opinion to the issue now presented is a citation to Goldsmith v. Sheriff, *supra*. That case focused on the issue of the requirements of the (then) hearsay exception (now deemed non-hearsay), and not with the mandates of the confrontation clause. As the high court made clear in Dutton v. Evans, 400 U.S. 74 (1970), decided the following year, the parameters of the hearsay rule are not to be equated with the requirements of the confrontation clause. 400 U.S. at 81–82, 86. The instant issue raised by appellant was not decided on the habeas appeal.

In *Dutton,* the Supreme Court upheld the conviction of the defendant, over a challenge to the admission of a statement allegedly made by a co-conspirator, on Sixth Amendment grounds.

The court stressed (a) the full opportunity of the defendant to cross-examine the testifying witness regarding whether the statement had been made by the declarant, and (b) the "indicia of reliability" of the statement itself, i.e., it was "spontaneous" and a declaration against penal interest. 400 U.S. at 88–89. Both of these criteria were met in the case at hand. Defense counsel ably cross-examined Allen at length. The statements made were clearly against declarant's penal interests, and they were not induced by a coercive situation or atmosphere.

We conclude, therefore, that the order of the trial court denying appellant's motion for a new trial must be affirmed; that the trial court properly received evidence of the juror's misconduct from the jurors themselves, and concluded that misconduct had occurred, but that there was no abuse of discretion in the court's determination that the appellant had not been prejudiced thereby. The rulings of the trial court on the admission of prior testimony of the unavailable witness must be upheld, including its discretionary determination to permit the prosecutor to endorse the name of a recently-discovered witness upon the information (with allowance for a continuance on behalf of the defense). The admission of the statement by Bishop to Allen was proper. Therefore, we affirm.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.