CAROL PAPPAS AND MARY BARTSAS, APPELLANTS, *v.* THE STATE OF NEVADA, ON RELATION OF ITS DEPARTMENT OF TRANSPORTATION, RESPONDENTS.

No. 18391

October 26, 1988           763 P.2d 348

[Rehearing denied December 9, 1988]

*Kermitt L. Waters,* Las Vegas, for Appellants.

*Brian McKay,* Attorney General, Carson City; *Dale E. Haley,* Deputy Attorney General, Las Vegas, for Respondents.

---

[4]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.

# OPINION

*Per Curiam:*

Appellants Carol Pappas and Mary Bartsas ("Landowners") owned 9.10 acres of land which was the subject of an eminent domain action by the State of Nevada. A jury trial was held to determine the fair market value of the property. The Landowners presented three expert witnesses who presented appraisal values, each based upon a presumption that the land would be zoned as entirely commercial property. In the opinions of the Landowners' experts the property was worth $2,378,000.00 to $2,500,000.00.

The State called one expert appraiser who based his opinion upon valuing the land as partially commercial and partially residential. He testified that the land's value was $1,200,000.00. The opinion of the State's appraiser was supported by the testimony of a County Commissioner and the Chief of County Planning who agreed that the land would not be zoned entirely for commercial use due to the residential character of nearby property.

While deliberating upon a verdict, the jurors experienced confusion regarding the meaning of part of the jury instructions. A question arose as to whether the jurors had to pick between the highest and lowest appraisal value or whether they could pick one of the values in between.[1] One of the jurors knocked upon the jury room door for assistance. The trial judge's secretary appeared. She indicated that she could not answer the question and instructed the jurors to reduce the question to writing. She also informed the jurors that neither the judge nor the attorneys were available at that time.

Forty-five minutes later the jury had reached a verdict. The jurors' prior question was never reduced to writing, nor presented

---

[1]The jury instruction which apparently gave rise to the confusion stated:

You must determine the fair market value of the subject property only from the opinions of the witnesses who have been permitted by the Court to express their opinion [sic] of such market value. Thus you may not find the market value of the subject property to be either less than or more than that testified to by the witnesses who have been permitted to express their opinions on such matters.

to the trial judge. The jury found that the proper value for the land was $1,200,000.00, the lowest appraisal value entered into evidence. After the verdict was returned, counsel for the Landowners requested that the jury be polled individually. All eight jurors assented to the verdict.

The Landowners subsequently moved for an evidentiary hearing, and a new trial based upon NRCP 59,[2] arguing that the interaction of the judge's secretary with the jurors during deliberations constituted an irregularity in the proceedings of the jury. In support of that motion the Landowners submitted the identical affidavits of four jurors. The affidavits recounted the events that took place in the jury room, the jurors' interaction with the secretary, and speculated that had the jurors' question been reduced to writing, the judge's response "would have opened a new area of inquiry which might have affected the outcome of the jury deliberations." The Landowners' motion for a new trial was denied by the trial court. Now the Landowners appeal that ruling.

The Landowners assert that the following errors occurred during the proceedings below: (1) The trial court abused its discretion by refusing to grant the Landowners' motion for a new trial; and (2) the trial court committed prejudicial error by instructing the jury that the Landowners had the burden of proving, by a preponderance of the evidence, the market value of the land. We do not find the Landowners' arguments persuasive, and accordingly, we affirm the trial court's ruling.

The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed on appeal absent palpable abuse. Southern Pac. Transp. Co. v. Fitzgerald, 94 Nev. 241, 577 P.2d 1234 (1978). The Landowners' have failed to show that any palpable abuse was committed by the trial court.

This court has long held that, as a general rule, jurors will not be permitted to impeach their own verdict. Weaver Bros., Ltd. v. Misskelley, 98 Nev. 232, 233, 645 P.2d 438, 439 (1982). By submitting the jurors' affidavits to the trial court, that is precisely what the Landowners attempted to do. Through the affidavits, the Landowners sought to show that the jurors failed to obtain clarifi-

---

[2]NRCP 59 provides in pertinent part:

. RULE 59. NEW TRIALS; AMENDMENT OF JUDGMENTS

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds materially affecting the substantial rights of the aggrieved party: (1) Irregularity in the proceedings of the court, jury, master, or adverse party. . . .

cation on the questioned jury instruction and therefore came to an erroneous verdict.

This court has already ruled that juror affidavits are not properly admissible to support such a theory. In Barker v. State, 95 Nev. 309, 594 P.2d 719 (1979), we held that while juror affidavits may properly be admitted to show what physically transpired in the jury room, they are inadmissible for proving the jurors' mental processes or the effects of alleged misconduct upon jurors. Accordingly, the judge below may have properly considered the affidavits only to the extent that they show the interaction between the jury and the secretary. The portion of the affidavits which speculates as to what effect the unanswered question had upon the outcome of the deliberation, or that the judge's clarification of the question may have influenced the verdict, is inadmissible.

Applying the rule laid out in *Barker,* the following facts supporting a new trial were properly before the trial judge: That the jurors knocked upon the jury room door; that when the judge's secretary appeared, a juror told her that they had a question regarding a jury instruction; that the secretary instructed the juror to reduce the question to writing and informed the jury that the judge and attorneys were not presently available; and that the jury arrived at a verdict without submitting the written question to the trial judge. Based upon such a showing, we hold that the trial judge was acting within his discretion in determining that this conduct did not amount to an irregularity in the proceedings of the jury sufficient to support a new trial under NRCP 59.[3]

The Landowners also contend that the trial court committed prejudicial error by instructing the jury that the Landowners had the burden of proving, by a preponderance of the evidence, the market value of the property that the State acquired. There is no error in this instruction. In Nevada, the burden of proving the value of land subject to eminent domain action is upon the landowner. State v. Pinson, 66 Nev. 227, 207 P.2d 1105 (1949);

---

[3]This is especially true since the jurors were never instructed that they must submit any questions regarding the jury instructions to the trial judge for clarification. In light of this fact, the jury's course of conduct cannot be said to amount to misbehavior.

The Landowners also argue that the secretary's indication to the jury that the judge was not presently available dissuaded the jury from submitting its question to the judge and constituted an irregularity in the proceedings. Again, this line of argument is non-persuasive, since it focuses on the effect of the secretary's conduct upon the jurors' behavior. It is but another inquiry into the mental processes of the jury and thus violates public policy. *See* Close v. Flanary, 77 Nev. 87, 114, 360 P.2d 259, 273 (1961).

Mack v. State, 77 Nev. 422, 365 P.2d 1117 (1961); Andrews v. Kingsbury Gen. Improvement Dist., 84 Nev. 88, 436 P.2d 813 (1968).

The Landowners suggest that Uniform Eminent Domain Code section 904 presents a more fair and equitable way to allocate the burden of proof in an eminent domain case.[4] Although the Landowners' argument favoring adoption of the Uniform Code section is well reasoned and persuasive, such a statutory change must be instituted through the legislature, not the court. This court's duty "ends with deciding what the law is, and it must be left to the legislature to make it what it ought to be." Vesey v. Benton, 13 Nev. 284 (1878). As the law presently stands, the burden of proof remains upon the condemnee or landowner to prove the value of the land taken. See State v. Pinson, 66 Nev. 227, 236, 207 P.2d 1105, 1109 (1949). Because the given jury instruction accurately reflected the distribution of the burden of proof as it currently exists in Nevada, we hold that no prejudicial error resulted from reading it to the jury.

The final judgment of the trial court is affirmed. The Landowners' claim for costs on appeal is denied.[5]

---

[4]Uniform Eminent Domain Code section 904 provides that "[n]o party has the burden of proof on the issue of the amount of compensation."

[5]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.