DAVID RIEBEL, aka E.M. "MAC" RICHMOND, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 19958

April 24, 1990 790 P.2d 1004

[Rehearing denied August 21, 1990]

*Norman Y. Herring*, Riverside, California, for Appellant.

*Brian McKay*, Attorney General, Carson City; *Brent T. Kolvet*, District Attorney, Douglas County, for Respondent.

## OPINION

*Per Curiam:*

At approximately 2:00 a.m. on October 23, 1987, appellant David Riebel entered the Lakeside Inn Casino in Stateline, Nevada, and demanded money from the cashier. Riebel was armed with a 9mm machine gun and a .357 caliber chrome revolver, and was wearing a bulletproof vest and a mask. He shot in the direction of the cashier with the automatic weapon, but the gun jammed after the second shot, so he left it on the counter and thereafter relied solely on the revolver. Following a shootout with security guards, Riebel took the money from the cashier and ran out the back door into the alley, trailing money behind him. Outside he was confronted by two sheriff's officers who had just left the sheriff's station across the street. He ignored their command to halt and instead continued to run toward them with his gun pointed in their direction. Fearing for his life and that of his partner, one of the officers fired eight shots, hitting Riebel four times. Neither officer saw or heard Riebel shoot or attempt to shoot his gun. The gun, it was later discovered, contained six spent shells and no live ammunition.

At the time of the incident, Riebel was fifty years old and had no prior criminal record. He was a former law practitioner from Ohio who was apparently suffering from a major depression.

Riebel claimed insanity as his defense. Following trying deliberations, a jury found Riebel guilty of one count each of robbery with the use of a deadly weapon, burglary, grand larceny, and assault with a deadly weapon. It also found Riebel guilty of five counts of attempted murder with the use of a deadly weapon for having shot at the cashier and the two security guards inside the casino and for having pointed his gun at the two officers in the alleyway. He was acquitted of one count of assault with a deadly

weapon. The jury's verdict was accompanied by a note which asked that Riebel's sentence include psychiatric care. The judge sentenced Riebel to a total of fifty-four years in prison.

On appeal, Riebel first contends that there is insufficient evidence to support the charges and convictions for attempted murder of the two sheriff's officers. We agree.

The parties agree that substantial evidence is the correct standard of review, Hern v. State, 97 Nev. 529, 531, 635 P.2d 278, 279 (1981), White v. State, 95 Nev. 881, 885, 603 P.2d 1063, 1065 (1979), but disagree as to whether substantial evidence exists to support these two convictions.

The crime of attempt requires "performance of an overt act toward the commission of the crime." Johnson v. Sheriff, 91 Nev. 161, 163, 532 P.2d 1037, 1038 (1975). Mere preparation is insufficient to prove an attempt to commit a crime. Moffett v. State, 96 Nev. 822, 824, 618 P.2d 1223, 1224 (1980). In cases recently decided by this court, the "overt act" toward commission of attempted murder included wounding the victim, Dolby v. State, 106 Nev. 63, 787 P.2d 388 (1990); actually shooting the gun but missing, Ewell v. State, 105 Nev. 897, 785 P.2d 1028 (1989); or, at the very least, pulling the trigger and having the gun malfunction, Keys v. State, 104 Nev. 736, 766 P.2d 270 (1988).

Riebel asserts that the information erroneously charged him with attempted murder for "shooting or attempting to shoot at" the two officers in the alleyway because there is no evidence that he shot, or attempted to shoot, the two officers. Both officers testified repeatedly that they did not see or hear Riebel shoot the gun, did not observe him pull the trigger, and did not see any muzzle flash, even though it was nighttime. Although pointing a gun goes beyond "mere preparation," *Moffett, supra,* merely pointing a gun is not sufficient to convict for attempted *murder.* As noted above, cases of attempted murder involve more directive and purposeful action than the mere pointing of a gun—they ordinarily involve actual firing of, or attempted firing of, the gun. There is simply no evidence in this case to indicate that Riebel did anything other than point the gun. Absent any evidence that he attempted to shoot the gun, the state cannot have proved, beyond a reasonable doubt, that Riebel acted overtly toward committing the crime of attempted murder of the two officers in the alleyway. These convictions, therefore, must be reversed.

Riebel next contends that the instructions given to the jury regarding attempted murder were improper because they sug-

gested to the jury that it could convict him based on *implied* malice. He argues that, as established by this court in Keys v. State, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988), a conviction for attempted murder requires *express* malice because attempted murder is a specific intent crime. We decline to reverse Riebel's convictions on this basis because, although the jury was improperly instructed on implied malice, it was properly instructed regarding the elements of attempted murder and Riebel was not prejudiced by the error.

The relevant jury instructions, in pertinent part, are as follows:

> Instruction No. 16:
>
> In order to prove the commission of ATTEMPTED MURDER, each of the following elements must be proved:
>
> 1. That a direct but ineffectual act was done by one person towards killing another human being; and
>
> That the person committing such act harbored *malice aforethought, namely, a specific intent to kill unlawfully another human being.*
>
> Instruction No. 17:
>
> *"Malice" may be either express or implied.*
>
> *Malice is express* when there is manifested an *intention unlawfully to kill a human being.*
>
> *Malice is implied* from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life or from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.
>
> Instruction No. 18:
>
> An attempt is defined as an act done with *intent* to commit a crime, and tending but failing to accomplish it.
>
> In order to attempt a criminal offense the following elements must be proved:
>
> 1. The *intent* to commit the crime;
> 2. Performance of some act toward its commission; and
> 3. Failure to consummate its commission.

(Emphasis added to each.)

In *Keys,* we held that it was error for the district court to refuse to instruct the jury that specific intent is an essential element of attempted murder, and that the court compounded the error by giving the jury instructions on implied malice. *Id.* at 739, 766 P.2d at 272. In reversing, we stated that: "Attempted murder is the performance of an act or acts which tend, but fail, to kill a

human being, when such acts are done with *express malice,* namely, with the *deliberate intention unlawfully to kill." Id.* at 740, 766 P.2d at 273 (emphasis added). *See also* People v. Kraft, 478 N.E.2d 1154, 1159-60 (Ill.App. 1 Dist. 1985) (all instructions which reflect a mental state other than an intent to kill must be omitted from the jury instructions because they are incompatible with the elements of attempted murder).

This case is distinguishable from *Keys* because the jury was instructed that attempted murder requires "malice aforethought, namely, a *specific intent* to kill unlawfully another human being." (Instruction No. 16, emphasis added.) Although this instruction was followed by a misleading instruction on both express and implied malice (Instruction No. 17), the error is not harmful as it was in *Keys.* As noted, unlike *Keys,* the jury in this case was informed that specific intent is an essential element of attempted murder. Thus, despite the erroneous instruction on implied malice, the error was cured because the jury was properly instructed regarding the elements of attempted murder.

Riebel additionally argues that the erroneous instruction prejudiced him because the prosecutor argued implied malice to the jury. In closing argument, the prosecutor stated, "[h]e didn't care, ladies and gentlemen, whether there was anybody else in that casino. He just shot. There were people there. He didn't care who he hit or what he hit." It is unlikely that these comments misled the jury because they were preceded by the comment, "[n]ow, in all of those cases he shot at people. He didn't shoot in the air to scare anybody. He shot at people." Subsequently, the prosecutor argued that "[u]nder those circumstances this man was trying to kill people. That's the only logical result of all those facts." The prosecutor's comments, taken as a whole, were sufficiently suggestive of express malice and the specific intent to kill so as not to be misleading. Therefore, any error which may have resulted from the instruction on implied malice was harmless. Consequently, we uphold the convictions for attempted murder of the three people inside the casino.

Riebel next contends that the district court's response to an inquiry from the jury resulted in a guilty verdict based on an improper jury compromise. This contention lacks merit.

Following approximately six hours of deliberations, the jury sent the judge the following note:

> As a jury, we are very close if not fully decided. We are heavy of heart and emotion and have the deepfelt need to make a subjective emotional statement that would accompany our verdict. Are we allowed to make a statement to the court with our decision?

A few minutes later, the judge responded with a signed note, which stated, in relevant part:

> Any statement you wish to make should be in writing and should accompany your verdicts.
> I will then decide if it should be read. .

The jury's guilty verdicts were accompanied by the following note:

> We, with anguish, find the defendant to be legally sane, within the brutally narrow confines of the Sanity Law.
> We respectfully suggest that his sentence be tempered by compassion, and include psychiatric care.

Following issuance of the verdicts, but before sentencing, defense counsel asked jurors to explain the note which accompanied the verdict. In response, several jurors wrote to the judge explaining that they had issued a guilty verdict based on the mistaken belief that the judge would consider their plea for leniency in sentencing.

Riebel contends that the exchange between the judge and the jury during the jury's deliberations resulted in a compromised verdict based on the jury's erroneous belief that it could influence the sentence, as evidenced by the letters from individual jurors. He argues that it is reversible error to allow a jury to consider punishment when deliberating its verdict or to lead the jury to believe that it can influence the sentence. In support, Riebel cites Rogers v. United States, 422 U.S. 35, 40 (1975) (court committed prejudicial error when previously undecided jury returned verdict less than five minutes after the judge said the jury could recommend leniency without telling the jury that any recommendation it made would not be binding), and United States v. Davidson, 367 F.2d 60, 63 (6th Cir. 1966) (court committed prejudicial error when it allowed previously deadlocked jury to recommend leniency even though the jury had been admonished that its recommendation would not be binding). Riebel contends that it is reversible error for the judge not to have admonished the jury that it had no role in sentencing. *Rogers,* 422 U.S. at 40.

Riebel's argument fails for several reasons. To begin, when this court is inquiring into the validity of a verdict, NRS 50.065(2) prohibits consideration of affidavits or testimony of jurors concerning their mental processes or state of mind in reaching the verdict. *See* Pappas v. State, Dep't Transp., 104 Nev. 572, 575, 763 P.2d 348, 349-50 (1988), and Barker v. State, 95 Nev. 309, 312, 594 P.2d 719, 721 (1979) (portions of affidavits or testimony regarding readily ascertainable objective facts about conduct and statements could be considered; portions regarding mental processes or state of mind were properly

excluded). The letters involved in this case clearly address the jurors' states of mind leading up to the verdict. For example, one juror wrote, "we were only able to reach a verdict based upon our *belief* that the court would consider our *thoughts* in this matter." (Emphasis added.) Riebel's claim that the letters contain objective facts which may properly be considered by this court is without merit.

Furthermore, this case is distinguishable from *Rogers* and *Davidson, supra.* First, unlike *Davidson,* the jury in this case was not deadlocked. The inquiry to the judge begins, "As a jury, we are very close if not fully decided." It is therefore improbable that the judge's response was likely to break a deadlock. *Cf.* United States v. Jackson, 470 F.2d 684, 688 (5th Cir. 1972), *cert. denied,* 412 U.S. 951 (1973) (court instruction on leniency not prejudicial error where court corrected error and jury not deadlocked). In addition, unlike *Rogers* and *Davidson,* the jury's note is not even a clear request for leniency. The note simply expressed a desire "to make a subjective emotional statement that would accompany our verdict." A request to make a "subjective emotional statement" could have several meanings and is not necessarily a plea for leniency. Although Riebel's assertion that the jury wanted to plead for leniency appears, after the fact, to be correct, that desire is not evident from the face of the note. Furthermore, unlike *Rogers, Jackson,* and *Davidson,* the judge did not instruct the jury that a plea for leniency would be considered. The judge simply instructed the jury to put its request in writing, and said, "I will then decide if it should be read." Moreover, Instruction No. 10 had instructed the jury that "what happens to the defendant under these [insanity] laws is not to be considered by you in determining whether the defendant was sane or not at the time he committed his crimes." Under the circumstances, no reasonable juror could have interpreted the judge's note as a clear directive that a plea for leniency would influence the sentence, or would even be considered during sentencing. We therefore hold that the verdict in this case was not the result of an improper jury compromise.

Accordingly, we reverse the convictions for attempted murder of the two officers in the alleyway, and affirm the remaining convictions including the convictions for attempted murder of the three persons inside the casino.