STEPHEN KELLY AND LATRICIA ANDERSON, APPEL-
LANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5418

May 13, 1968                                    440 P.2d 889

*Richard H. Bryan,* Public Defender, and *Robert G. Legakes,* Deputy Public Defender, for Appellants.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, and *Earl Gripentrog,* Chief Criminal Deputy District Attorney, for Respondent.

**OPINION**

By the Court, Mowbray, J.:

Stephen Kelly and Latricia Anderson were charged with the crime of robbery in the Eighth Judicial District Court in Clark County and tried before a jury. They were found guilty and they appeal.

They urge as reversible error the introduction during the trial of a .25 caliber automatic pistol found in the glove compartment of Kelly's car. They challenge the adequacy of the police officer's affidavit filed in support of the magistrate's search warrant, which they assert violates their constitutional rights of the Fourth and Fourteenth Amendments of the United States Constitution. Gordon v. State, 83 Nev. 177, 426 P.2d 424 (1967); Wong Sun v. United States, 371 U.S. 471 (1962); Mapp v. Ohio, 367 U.S. 643 (1961).

The victim of the robbery, Vernon Heeke, testified that on February 6, 1967, he met the appellants and Kelly's wife in the bar of the Showboat Hotel in Las Vegas. They engaged in conversation, and after they partook of the available refreshments, Kelly's wife suggested that Heeke escort her to Kelly's car, which was parked near the hotel. Heeke agreed. At the same time, Kelly and Anderson left the bar and intercepted Heeke in an unlighted alley and robbed him.

Heeke testified during the trial as follows:

"Q.   What did the defendant Kelly do at that point [at the time of the robbery]?

"A.   He said, 'This is a hold-up.'

"Q.   What was the defendant Anderson doing?

"A.   She was standing off to one side.

"Q.   What did you do?

"A.   I just stood there. He clicked something that sounded like a gun.

"Q.   He clicked something?

"A.   That sounded like a gun being loaded, and he says, 'Empty your pockets.'

"Q.   Did you see anything in his hand?

"A.   It looked like there was something in it. It was in a dark area.

"Q.   And then he said, 'Empty your pockets'?

"A.   That's right.

"Q. And what did you do?

"A. I emptied my two front pockets; then he says, 'Turn around,' and somebody got my billfold out of my rear pocket.

"Q. Do you know who did this?

"A. I don't know. I don't know because I was turning around.

"Q. And what happened next?

"A. Then they told me to start walking.

"Q. And where did you—

"A. I walked to the end of that block, then turned around and went back to the Showboat to report the case, to get hold of the police."

Heeke reported the robbery to the Las Vegas police and gave the police a description of the Kellys and Anderson. Later in the evening of the same day the Kellys were apprehended in the Silver Nugget Casino in North Las Vegas. A police record check revealed the license number of Kelly's car, which was located in the Silver Nugget's parking lot and impounded by the police. Anderson was arrested at her apartment in Las Vegas. Neither the Kellys nor Anderson had a pistol in his or her possession when taken into custody.

The following morning the police officers secured a search warrant to search Kelly's car for the pistol, and upon the affidavit supplied, the magistrate issued the search warrant. Appellants contend that the officer's affidavit is constitutionally defective in that it does not establish probable cause for the search. The affidavit[1] presented to the magistrate the following

---

[1]"AFFIDAVIT FOR SEARCH WARRANT

STATE OF NEVADA ⎱ ss.
COUNTY OF CLARK ⎰

JACK D. PHILLIPS, being first duly sworn, deposes and says:

1. That on or about the 6th day of February, 1967, in the City of Las Vegas, County of Clark, State of Nevada, the crime of Armed Robbery, to wit: on the person of VERNON HEEKE, was committed by STEVEN KELLY, GEORGEANN KELLY and LATRICIA ANDERSON, in the manner following, to wit: The victim, VERNON HEEKE, was asked to accompany the three suspects to the vehicle belonging to STEVEN and GEORGEANN KELLY, and while en route from the SHOWBOAT HOTEL, in an alley, rear of 2400 block of Clifford Street, City of Las Vegas, County of Clark, State of Nevada, subject STEVEN KELLY did pull a gun from his pocket and point said gun at the victim, VERNON HEEKE, and ordered the victim to remove his wallet and other articles from his pocket and drop them on the ground. Victim VERNON HEEKE did as told. STEVEN KELLY picked up the wallet containing $103.00 and the other articles and then, accompanied by the two above-described females, KELLY proceeded to his vehicle and left the scene.

2. That affiant has, and there is, just, probable and reasonable cause

information, which we deem sufficient to establish probable cause for the issuance of the warrant:

1. A robbery was committed on or about February 6, 1967.

2. Allegedly a gun was used in the commission of the crime.

3. Vernon Heeke was the victim.

4. There were three named suspects arrested and identified by the victim.

5. A certain vehicle was identified as the car used by the suspects to leave the scene of the crime.

6. Two of the suspects—the Kellys—were arrested inside the Silver Nugget Casino.

7. The Kellys did not have the gun in their possession when arrested.

---

to believe, and he does believe, that there is now contained in a 1956 Chevrolet two-door, blue in color, bearing New York license #8486QN, certain article which was used as a means of committing a felony, the above-described vehicle now located in impound at the DOWNTOWN VEGAS GARAGE, located at 145 West Imperial, City of Las Vegas, County of Clark, State of Nevada.

3. That the said article is described particularly as follows, to wit: One .25 caliber automatic, blue in color, hand gun.

4. That the following facts establish the existence of grounds for the issuance of a search warrant for the search of the said described car: a 1956 Chevrolet two-door, blue in color, bearing New York license #8486QN, and, further, establish probable cause for believing that said grounds exist: The suspects, after being apprehended, were identified by said victim, VERNON HEEKE, and the said vehicle also being identified which was used as a means of transporting the suspects from the scene of the crime. Two of the suspects, GEORGEANN KELLY and STEVEN KELLY, were arrested inside of a casino, the SILVER NUG–GET CASINO, located in the City of North Las Vegas, County of Clark, State of Nevada. Said suspects, upon arrest, did not have said gun in their possession, and the vehicle, being parked in the parking lot of said SILVER NUGGET CASINO, and the residence of suspects STEVEN KELLY and GEORGEANN KELLY, located at 2921 Elm, City of Las Vegas, County of Clark, State of Nevada, had been under observation by police officers after the occurrence of the robbery for apprehension of the suspects, and the vehicle was never seen to arrive at that location. Therefore it is believed by the affiant that the above-described gun is still located within said vehicle.

Wherefore, affiant prays that a search warrant issue commanding that an immediate search be made of the above-described vehicle, a 1956 Chevrolet two-door, blue in color, bearing New York license plates #8486QN, for the article above described, and that the same be brought before a magistrate and disposed of according to law.

Jack D Phillips

Subscribed and sworn to before me on this 7th day of February, 1967.

William P. Compton
Judge, Eighth Judicial Court"

8. Kelly's car was parked in the Silver Nugget parking lot.

9. The Kellys' residence had been put under observation after the robbery.

10. Kelly's car was not driven to their residence after the robbery.

11. The car had been impounded.

Based upon this information, the officer stated that it was his belief that the gun was still in Kelly's car. Though the affidavit does not give all the evidentiary facts, it does provide a sufficient basis for this court to sustain the magistrate's decision to issue a search warrant. As the court said in Aguilar v. Texas, 378 U.S. 108, 111 (1964): " * * * when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' * * * and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present. * * *.' "

It was perfectly reasonable to conclude from the facts recited that the weapon was in Kelly's car.

Appellants also contend that the affidavit is constitutionally defective in that it does not specifically set forth with particularity the source of the affiant's information and the reliability of that source. This contention is without merit. Appellants place great reliance upon the following language in Giordenello v. United States, 357 U.S. 480, 486 (1958): "The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made."

This language is not applicable to the facts in this case, for the following reasons. There is virtually no comparison between the affidavit in Giordenello and the one in the case at bar.[2] In Giordenello, the affidavit upon which the search warrant was issued merely set forth the elements of the crime and the officer's belief that the petitioner had committed it. It provided the

---

[2]The same can be said regarding the affidavit in Aguilar v. Texas, supra. It did not set forth any of the underlying facts comprising the basis for affiant's belief that reasonable cause existed for the issuance of the search warrant.

magistrate with no information upon which he could make an independent determination of probable cause.

" * * * The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the 'probable cause' required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime.

"When the complaint in this case is judged with these considerations in mind, it is clear that it does not pass muster because it does not provide any basis for the Commissioner's determination * * * that probable cause existed." Giordenello v. United States, supra, at 486.

In the present case the magistrate, who was a District Court judge, received the officer's statement under oath, which recited the underlying facts and circumstances supporting the officer's belief that there was reasonable cause to believe the weapon sought was in Kelly's car. The magistrate was not asked to accept the affiant's conclusion. In Giordenello there was no sufficient basis set forth for the affiant's belief. In the present case, there is ample basis set forth under oath in the officer's statement to enable the magistrate to perform his function and make an independent determination. This he did, and properly so.

The Supreme Court of the United States said, in Nathanson v. United States, 290 U.S. 41, 47 (1933):

"Under the Fourth Amendment, an officer may not properly issue a warrant to search a dwelling unless he can find probable cause therefor from *facts or circumstances* presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." (Emphasis supplied.)

Where the affidavit is otherwise sufficient, as it is in the present case, it is not entirely unreasonable to assume that the affiant spoke either from personal knowledge or from other reliable sources. This is particularly so where, as here, the affiant has expressed confidence in his sources by stating his belief in the information supplied. As the court commented in McCray v. Illinois, 386 U.S. 300, 313 (1967), regarding officers' testimony in a hearing to determine probable cause:

"Nothing in the Due Process Clause of the Fourteenth Amendment requires a state court judge in every such hearing to assume the arresting officers are committing perjury."

The matters set forth in the affidavit of officer Phillips are

the everyday sort of matters readily available to an interested and alert police officer. There was a crime, an identification by the victim, an arrest, etc. To require, under these circumstances, a specific recital that the information was obtained from police records or another source would exalt form over substance and ritual over purpose.

In United States v. Ventresca, 380 U.S. 102, 108 (1965), the court stated:

" * * * the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, *affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.*" (Emphasis added.)

The officer's effort to obtain a search warrant to search a car held in police custody should not be hampered by this court's unreasoned application of rules enunciated under different circumstances. Sufficient basis appearing in the affidavit, the magistrate's finding of probable cause was valid.

Appellants also contend that it was prejudicial error to submit the affidavit to the jury. The affidavit was included with the exhibits and instructions and taken to the jury room when the jury retired. Almost immediately thereafter, when the trial judge learned that it was included with the exhibits, he informed counsel and ordered the bailiff to retrieve it from the jury room. When the jury returned with their verdict, the trial judge inquired of each juror if he had seen or read the affidavit, and each replied in the negative. We therefore find that, although the affidavit should not be submitted to the jury, it was clearly harmless error to do so under the facts in this case.

The judgment is affirmed.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.