FRANCISCO HUI, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 16835

June 25, 1987                                738 P.2d 892

*Morgan D. Harris,* Public Defender, *Robert L. Miller,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City, *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, *Brad Jerbic,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Francisco Hui was convicted of first-degree murder with the use of a deadly weapon and battery with the use of a deadly weapon. He appeals, citing numerous assignments of error including the admission of evidence derived from an allegedly unnecessarily suggestive police showup, the district court judge's examination into each juror's mental processes after discovering juror misconduct during deliberation, and the court's failure to grant a new trial based upon prejudicial juror misconduct. We conclude that the instance of juror misconduct prevented Hui from receiving a fair trial. Accordingly, we reverse the judgment of conviction and remand for a new trial.

On March 13, 1983, Hui allegedly shot Luis Adams and Jorge Rivero with a handgun. Adams died from a bullet wound to his abdomen and Rivero was treated for a bullet wound to his leg.

On November 7, 1983, Hui's first jury trial commenced. The jury returned a guilty verdict and Hui was sentenced to life imprisonment without the possibility of parole. Hui's counsel moved·for a new trial and the motion was granted.

On July 22, 1985, Hui's second jury trial commenced. In

court, two eyewitnesses positively identified Hui as the suspect at the scene of the shooting. Hui's counsel moved for a mistrial based upon the suggestive nature of the police's prior staged one-on-one identification. The district court denied the motion and the case was submitted to the jury.

During deliberation, the jury foreman informed the district court judge that one of the jurors had revealed to the jury a newspaper article reciting Hui's first trial verdict. Thereafter, the judge undertook an individual examination of each juror in order to determine the effect the disclosure would have upon the verdict. Eleven jurors stated that the disclosure would have no effect on their decision. Juror No. 8, however, was unsure of the effect of the disclosure. Hui's counsel moved for a mistrial based upon the prejudicial effect the newspaper disclosure would have upon the jury. The district court denied the motion. The jury returned to deliberation and found Hui guilty.

Hui's counsel moved for a new trial based upon the juror misconduct. The district court denied the motion. Hui was sentenced to two consecutive terms of life imprisonment without the possibility of parole for murder in the first degree with the use of a deadly weapon and a concurrent ten-year sentence for battery with the use of a deadly weapon.

Nevada law prohibits a juror from divulging personal knowledge to the jury. NRS 175.121(1)(a).[1] Once personal knowledge is disclosed, the judge shall declare a mistrial.[2]

Not every instance of juror misconduct, however, requires the granting of a motion for new trial. Barker v. State, 95 Nev. 309, 594 P.2d 719 (1979). We must consider the issue in light of Chapman v. California, 386 U.S. 18, 24 (1966), *reh'g denied,* 386 U.S. 987 (1967) where the United States Supreme Court held "[t]hat before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Applying the foregoing standard, we conclude that the error in this case was not harmless. To reach this conclusion one need only glance at Juror No. 8's canvass which is set forth as follows in full:

Q. We understand that one of the jurors disclosed that she had

---

[1]NRS 175.121(1)(a) prescribes:

No juror may declare to his fellow jurors any fact relating to the case as of his own personal knowledge . . . .

[2]NRS 175.121(4) prescribes:

If it appears that the juror has declared any fact relating to the case to his fellow jurors as of his own knowledge, or that his vote was influenced by such knowledge undisclosed, the judge shall declare a mistrial.

read a newspaper article and that the contents of what she read were disclosed to you and we wanted to know if it influenced your decision or whether you have reached a decision on the matter.

A. No, it hadn't influenced my decision.

\* \* \* \*

Q. Had you reached a conclusion?

A. No. I'm teetering.

Q. You're still teetering?

A. Yes.

Q. Okay. You still have not reached a decision then?

A. Right.

Q. Okay. Do you have a feeling whether that disclosure—

THE COURT: Okay. [Defense Counsel ?]

## EXAMINATION

Q. It hasn't, to this point, but you think it may, at least consciously or subconsciously, affect you?

A. No.

Q. Do you think, after the proceedings are over, you'll believe your decision wouldn't have been affected at all by what you have been told about the newspaper article?

A. No, I don't think so. Well, I thought before it was a hung jury. That's why we were—why he was being tried again. Maybe it would have some bearing because now you know for sure that he was convicted before, with life in prison, but I don't know whether with or without the possibility of parole.

Q. I assume it would make your decision easier, one way or another, mightn't it?

A. I try not to take it into consideration, because I'm still trying to put all the evidence together and see whether he really did it or not, so I'm really not even using that to make my decision.

Q. But you indicated it might make some difference.

A. I don't know. I don't think so.

THE COURT: [Prosecutor ?]

## EXAMINATION

Q. Do you still feel like you can be fair and impartial in reaching a decision regarding guilt or innocence?

A. Yes.

Q. Knowing what you know now, since you've heard the instructions, you've heard all the evidence, you've heard the argument, but you did hear some disclosure about what someone had read in the newspaper, if you were in the position of either the prosecution or the defense, would you still want 12 jurors of your frame of mind to sit in judgment on the case?

A.   Yeah.

We are unable to conclude that the disclosure of the newspaper article did not affect the jury's verdict, or the decision of any juror, "[b]eyond a reasonable doubt." *Id.* at 24. In Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985), we established a review procedure for misconduct:

> We have established certain considerations which are rele-
> vant to the decision of whether the error is harmless or
> prejudicial. These include whether the issue of innocence or
> guilt is close, the quantity and character of the error, and the
> gravity of the crime charged.

In the case at hand, the quantity and character of the error are severe because an entire jury was informed of the previous jury's verdict for the identical offense. Also, Hui was charged with a serious felony. Moreover, we cannot say without reservation that the verdict would have been the same in the absence of error. The newspaper disclosure may have prevented Hui from receiving an impartial jury trial and due process of law as guaranteed him by the Sixth and Fourteenth Amendments to the United States Con-stitution. Accordingly, we need not reach Hui's remaining assign-ments of error and conclude that the judgment of conviction must be reversed and remanded for a new trial.

GUNDERSON, C. J., and STEFFEN, YOUNG, and MOWBRAY, J.J., concur.