CONSUELO WINIARZ, aka CONSUELO WEST, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 21458

November 13, 1991                    820 P.2d 1317

*George R. Carter* and *John G. Watkins,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, and *Ulrich W. Smith,* Deputy District Attorney, for Respondent.

## OPINION

*Per Curiam:*

Consuelo Winiarz, aka Consuelo West ("Consuelo"), was charged with murdering Jacob Winiarz, on April 22, 1984, at the couple's home in Las Vegas. Although Consuelo does not deny having shot Jacob, she claims that his death was an accident and that she believed the gun was loaded with blanks.[1]

Consuelo's case was initially tried on May 5, 1986. A jury found her guilty of first degree murder with use of a deadly weapon, and sentenced her to life in prison without the possibility of parole. Consuelo appealed to this court, which reversed and remanded on the grounds that the opinion testimony of a state-appointed psychiatrist testifying on behalf of the prosecution was extremely prejudicial and improper. *See* Winiarz v. State, 104 Nev. 43, 752 P.2d 761 (1988).

Consuelo was then tried a second time on October 24, 1989. While the jury in this second trial was deliberating, it had occasion to view the clerk's notes from the first trial, containing the original verdict of first degree murder with use of a deadly

---

[1]Consuelo's story is briefly described as follows:

On April Fool's Day, 1984, Consuelo and Jacob Winiarz (to whom Consuelo was ostensibly married by virtue of an invalid marriage ceremony) decided to play a trick on a friend who was visiting them at their home. Consuelo and Jacob staged an argument, whereupon Consuelo pulled a gun on Jacob and fired at him, using blanks. Jacob pretended to die, spilling ketchup over himself to suggest that he was bleeding.

On Easter Day, 1984, a different group of friends was at Consuelo and Jacob's home. Most of the people present, including Consuelo and Jacob, had been either smoking marijuana or drinking. Consuelo and Jacob appeared to argue and Consuelo shot at Jacob four times. When she allegedly first realized that there were real bullets in the gun and that Jacob had been wounded, Consuelo called an ambulance and went for help. *See generally* Winiarz v. State, 104 Nev. 43, 752 P.2d 761 (1988).

weapon and the sentence of life in prison without the possibility of parole. This document was found in a box of exhibits erroneously placed in the jury room during the guilt phase of the trial, where it was seen by some jurors and briefly discussed. The jury found Consuelo guilty of first degree murder. Near the end of the deliberations during the penalty phase of the trial, the foreman requested to see the erroneously admitted document the jurors had seen during the guilt phase deliberations. This brought the matter to the district judge's attention, and his initial reaction was that he must declare a mistrial. However, after polling members of the jury, all of whom denied that their knowledge of the document entered into their consideration of the case, the judge let the verdict stand.

The defense argues that submission of this document to the jury was reversible error. In addition, the defense argues that admission of the uncorroborated testimony of Drew Spangler (Spangler), a man to whom Consuelo was briefly married, was reversible error. We reverse on both grounds.

First, we hold that it was reversible error for the jury to have access to the transcript from Consuelo's prior trial, complete with verdict and sentence. The potential for substantial prejudice exists when a jury is permitted to consider evidence not admitted at trial. This court has stated that "the proper standard to be applied . . . in light of the confrontation clause and due process implications . . . is that a new trial must be granted unless it appears, beyond a reasonable doubt, that no prejudice has resulted." Barker v. State, 95 Nev. 309, 313, 594 P.2d 719, 721 (1979) (citing Chapman v. California, 386 U.S. 18 (1967)).

The determination of whether reversible prejudice has resulted from jurors' consideration of inadmissible evidence in a given case "is a fact question to be determined by the trial court, and its determination will not be disturbed on appeal in the absence of a showing of an abuse of discretion." Rowbottom v. State, 105 Nev. 472, 486, 779 P.2d 934, 942-43 (1989) (citing Barker v. State, 95 Nev. 309, 313, 594 P.2d 719, 721-22 (1979)). Factors to be considered in deciding whether to reverse are "whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged." *Rowbottom,* 105 Nev. at 486, 779 P.2d at 943 (quoting Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985)).

In the instant case, the criteria used to determine whether reversible error occurred weighs in Consuelo's favor. First, because she was charged with first degree murder with use of a

deadly weapon, her interest in obtaining a fair trial is significant. Second, the issue of innocence or guilt is close. In *Big Pond,* this court reversed the holding where the error was relatively minor,[2] but the issue of innocence or guilt was extremely close, resting almost wholly upon the appellant's credibility. *Big Pond,* 101 Nev. at 2, 692 P.2d at 1289. In the instant case, whether Consuelo was found to have committed first degree murder or whether something more akin to an accident occurred is an issue which rests wholly upon Consuelo's state of mind. The only evidence of her state of mind presented at trial was circumstantial.[3] Therefore, any degree of error is more likely to be prejudicial.

Finally, the quantity and character of the error in this case weigh in favor of reversal. Cases in which the error involves the jury's discovery of information relating to a defendant's prior trial or prior bad act are generally reversed for prejudice. *See, e.g.,* Hui v. State, 103 Nev. 321, 323, 738 P.2d 892, 894 (1987) (reversible error where juror told the jury of a newspaper article reciting verdict from first trial on the same charges); People v. Holloway, 790 P.2d 1327, 1333 (Cal. 1990) (juror's reading of article revealing defendant's prior conviction for assaulting woman with hammer was extremely prejudicial); State v. Thacker, 602 P.2d 62 (Idaho 1979) (reversible error where jury had access to a police information on the same defendant which was not the information from the case at bar).

In cases in which courts have decided not to reverse for errors involving juror access to information concerning defendants' prior trials, a distinguishing element is that the verdict of the first trial was not made known. *See, e.g.,* State v. Hansen, 751 P.2d 951, 955-56 (Ariz. 1988) (jurors' discussion of prior trial was brief and inconsequential, and there was no discussion of previous verdict).

In the instant case, the error consisted of the jury having access to the clerk's notes from appellant's first trial on the instant charge. This document plainly relates not only the first jury's verdict—guilty of first degree murder with use of a deadly

---

[2]The errors in Big Pond v. State, 101 Nev. 1, 2, 692 P.2d 1288, 1289 (1985), a rape case, consisted of (1) one juror making a statement during deliberations to the effect that the absence of semen on the body of a rape victim, as occurred in that case, was not uncommon and happened in over half of the cases, and (2) the bailiff being discovered to have engaged in a conversation with a juror about the *Miranda* decision during a trial lunch recess.

[3]Consuelo did not testify at trial. The only evidence relating to her actual state of mind at the time of the shooting was the testimony of other witnesses regarding how Consuelo had behaved and what she had said on that day.

weapon—but also the first jury's sentence of life imprisonment without the possibility of parole. Thus, a wavering jury could look to this document for reassurance that another group of twelve jurors carefully considered the evidence presented and arrived at the stated conclusion. Thus, admission of the document was highly prejudicial. In addition, in the present case, the source of the inadmissible evidence was an official court document, rather than a juror's hearsay recollection of a newspaper article. Consequently, a jury would perceive the document as being more reliable and its prejudicial effect would be greater.

The State argues that, despite the prejudicial character of the evidence, the conviction need not be reversed because the jury did not rely upon the evidence in reaching its verdict. In particular, the State contends that the evidence was available only during the sentencing portion of the trial. This conclusion is contradicted by Judge Foley's decision which states:

> When the jury retired to deliberate on the *guilt* phase on Saturday at 9:00 A.M., the box containing evidence from the first trial, that was neither marked for identification or admitted in the second trial, was mistakenly placed in the jury deliberation room. This mistake did not come to light until, as aforesaid, immediately prior to the rendition of the verdict in the penalty phase.

(Emphasis added.) Thus, it appears that the inadmissible evidence was made available to the jury during the guilt phase.

Furthermore, the State notes that upon questioning by the prosecution, all twelve jurors stated that their decisions were not affected by the document. However, jurors' avowals that they were not influenced by improperly admitted evidence are not dispositive on the issue of whether they were in fact influenced. *See Hui,* 103 Nev. at 325, 738 P.2d at 894. In *Hui,* jurors were questioned as to the effect that inadmissible evidence of the appellant's prior trial on the same charges had had upon their decision. Eleven jurors said they had reached a conclusion prior to disclosure of the information. *Id.* at 323, 738 P.2d at 893. The case was reversed and remanded based upon one juror's response to the questioning which, for the most part, indicated that the evidence had no influence upon his verdict. *Id.* at 324-25, 738 P.2d at 894.

The California Supreme Court has adopted a presumption of prejudice where jurors have had access to inadmissible evidence.[4]

---

[4]In People v. Pierce, 595 P.2d 91, 95 (Cal. 1979), the court found that given this presumption, the State had not met its burden by merely submitting: (1) an investigative report of an interview with the offending juror

People v. Pierce, 595 P.2d 91, 95 (Cal. 1979). *See also Holloway*, 790 P.2d at 1333-35. This approach is justified by the practical difficulty encountered when attempting to determine whether a jury has in fact been improperly influenced. In the instant case, although the jurors' answers to the prosecution's inquiry concerning the improperly admitted document suggest that they were not influenced by it, other facts suggest otherwise. All jurors denied having relied upon the document, yet several admitted to having seen and briefly discussed it. The fact that the foreman specifically requested a second look at the document before delivering the final verdict strongly suggests that at least some members of the jury had knowledge of the document and of its importance.[5] Juror No. 10's testimony that the jurors agreed amongst themselves that the document had no relevance and that they would not consider it fails to explain why they would request to see it a second time.[6]

Furthermore, the State's affidavit makes it clear that the document may have influenced the outcome of the trial. The affidavit states:

> The jurors explained that the only reason they asked during the penalty hearing to see the evidence box of the first trial was because they wanted to give the Defendant every conceivable chance to get life with the possibility of parole, and since the *first vote was 11-1* for life without the possibility of parole, . . . .

Thus, the opportunity existed for the improperly admitted document to change the outcome of the trial.

A final crucial factor in the instant case is the fact that the error in question was easily preventable. Although there may be practical difficulties associated with attempting to shield a jury from all outside influences, presenting jury members with inadmissible official documents is pure carelessness on the part of the court's

---

stating that the inadmissible evidence had not influenced his vote; and (2) the prosecutor's investigative report stating that each of the other eleven jurors had signed declarations denying knowledge of the evidence.

[5]If the document had been present in the jury room but none of the jurors had seen it, the error would have been harmless. *See* Kelly v. State, 84 Nev. 332, 338, 440 P.2d 889, 893 (1968) (juror access to affidavit for search warrant held harmless where each juror stated he had not seen or read the affidavit).

[6]In addition, although not all jurors testified to having seen the document (defense counsel was unable to question all jurors by telephone because their numbers were not released), it is well established that if even one juror is improperly influenced, this is sufficient to constitute reversible error. *See, e.g.*, Hui v. State, 103 Nev. 321, 738 P.2d 892 (1987).

staff. By reversing this case, we do not impose any new burdens upon the courts.

In addition, we hold that admission of Spangler's testimony was error. Spangler was married to Consuelo for a short period in 1983. In court, he testified that on one occasion, Consuelo had pulled a gun on him and said she would either be a divorcee or a widow, which prompted him to seek an annulment.[7] He also said that she had fired two shots at him from six feet away in front of a friend's house in broad daylight. No police report was filed, and no other evidence was offered to corroborate the suggestion that this event ever occurred. On the stand, Spangler also testified that he had seen the bullets come out of the barrel, that they came out fast, and that he could see the bullets when they were still inside the gun. In addition, he testified that the reason he knew that the bullets in the gun were real and not blanks was that he had seen them. Furthermore, Spangler testified that he thought both Consuelo and the defense counsel were from outer space, although everyone else in the courtroom was from earth.

The defense argues that the testimony of Mr. Spangler as to Consuelo's alleged prior bad act is more prejudicial than probative, and therefore should have been excluded under NRS 48.045(2).[8] On the other hand, the State maintains that Spangler's testimony, as evidence of Consuelo's alleged prior bad act, falls within the NRS 48.045(2) exception for acts demonstrating intent, knowledge, and absence of mistake.

Before evidence of prior bad acts may be admitted, there must be clear and convincing evidence that such acts actually occurred. *See, e.g.,* Kimberly v. State, 104 Nev. 336, 757 P.2d 1326 (1988) (reversible error in sex crimes case to admit evidence of a prior similar incident where the grand jury did not consider evidence of the earlier act sufficient to support an

---

[7]On cross-examination, the defense attempted to show that it was Consuelo who filed for the annulment. Spangler denied this. However, when asked whether he knew the difference between a plaintiff and a defendant in a case, he said he did. When asked which party he was in the annulment, he said he was the defendant.

[8]NRS 48.045(2) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

indictment); Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985) (evidence of prior act was clear and convincing where appellant admitted to the act, there were eyewitnesses, and there was tangible evidence consisting of a dead body which proved that the prior act actually occurred); Tucker v. State, 82 Nev. 127, 412 P.2d 970 (1966) (reversible error to permit the jury to consider evidence that a prior homicide had occurred at appellant's home where a grand jury refused to indict appellant for the prior homicide). This is a fundamental tenet of both Nevada and federal law.[9]

In the instant case, it is unclear whether the alleged prior shooting incident actually occurred. Drew Spangler testified that Consuelo fired two real bullets at him from a .32 caliber revolver from six feet away in broad daylight in front of a friend's house. Neither of the bullets struck Mr. Spangler. In addition, he did not report the incident to the police. The State did not produce any witnesses to the event. Although the State maintains that it is clear that this incident happened because something must have prompted Spangler's filing for an annulment, the evidence suggests equally strongly that it was Consuelo who initiated the annulment action. Thus, in the instant case, there is really no evidence that any crime ever occurred, apart from the testimony of a witness who may have been influenced by personal animus towards Consuelo.

Furthermore, for Spangler's testimony to be probative with respect to the issue of whether Jacob's death was a mistake, the State must also prove that Consuelo used live bullets in the alleged prior shooting. If the prior shooting had in fact occurred and if Consuelo had used blanks at that time, this alleged "bad act" would actually support Consuelo's version of what happened the day Jacob was killed. Consequently, the fact that live bullets were used must also be proven by clear and convincing evidence. The evidence presented was equally unpersuasive on this point. Thus, we hold that admission of Spangler's testimony concerning Consuelo's alleged prior bad act was error. Because we cannot say beyond a reasonable doubt that this error was harmless, we conclude that it merits reversal.

---

[9]NRS 48.045(2) is analogous to Fed. R. Evid. 404(b). Cases interpreting Fed. R. Evid. 404(b) also require clear and convincing evidence that the defendant committed the prior bad act. *See generally* United States v. McCollum, 732 F.2d 1419, 1424-25 (9th Cir. 1984), *cert. denied,* 469 U.S. 920 (1984) (evidence of prior bad acts may not be introduced to show intent if there is substantial dispute concerning whether the event charged as a crime occurred at all); United States v. Jimenez, 613 F.2d 1373, 1376 (5th Cir. 1980) (government must produce evidence of the prior act which would withstand directed verdict in a trial for that act).

Accordingly, we reverse and remand based upon the district court's error (1) permitting the jury to view the clerk's notes from the prior trial and (2) permitting Spangler's uncorroborated testimony concerning appellant's alleged prior bad act.

MOWBRAY, C. J., ROSE, STEFFEN, and YOUNG, JJ., and HUFFAKER, D. J.,[10] concur.