ANGELO PANTANO, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 43426

July 20, 2006                                      138 P.3d 477

*Philip J. Kohn*, Public Defender, and *Mark S. Blaskey* and *Jordan S. Savage*, Deputy Public Defenders, Clark County, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, *James Tufteland*, Chief Deputy District Attorney, and *Elissa Luzaich*, Deputy District Attorney, Clark County, for Respondent.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, MAUPIN, J.:

In this appeal, we consider the constitutionality of NRS 51.385, which concerns admission of child-victim statements in criminal proceedings through the testimony of others. We also determine whether a child-victim's statements to a parent regarding a sexual assault constitute testimonial hearsay under the United States Supreme Court's decision in *Crawford v. Washington*.[1] For the reasons stated below, we affirm.

### FACTS AND PROCEDURAL HISTORY

Respondent Angelo Pantano digitally penetrated his seven-year-old female cousin, D.D., while visiting at her home in Las Vegas.

[1]541 U.S. 36 (2004).

Several days elapsed before D.D. disclosed the incident. Ultimately, after D.D.'s mother discovered the child's stained underwear, D.D. indicated that Pantano had digitally penetrated her "kiki," a term she used for her vagina.

The mother later asked D.D. to repeat to her father what she had said about the incident. D.D.'s initial failure to respond evoked the father's concern that someone had inappropriately touched her at school. When he asked her if that had been the case, D.D. implicated Pantano. Because Pantano would not have had access to D.D. at the school, and because she remained reluctant to describe the incident, her father more specifically inquired as to whether someone had been touching her in a sexual manner. To this, D.D. responded in the affirmative as follows: "he [Pantano] stick [sic] his finger in my kiki, Daddy." The father asked her three further times if she was sure about the accusation and received uniform affirmative responses. When asked why D.D. did not report the incident sooner, she responded that Pantano had warned her that she would be in trouble if she did so. Shortly thereafter, the parents reported the matter to the Las Vegas Metropolitan Police Department (LVMPD).

As part of the initial investigation, LVMPD Detective Rick Given took a further statement from the child confirming the incident. Detective Given also took a voluntary statement from Pantano, during which Pantano confessed to digitally penetrating the child. He further admitted to touching D.D.'s buttocks with his penis while masturbating behind her in her bed.

The State charged Pantano with sexual assault with a minor under the age of 14 for the digital penetration, and lewdness with a child under the age of 14 for the penile contact. At a pretrial hearing, the district court conducted a statutory reliability determination under NRS 51.385, discussed *infra*, regarding D.D.'s hearsay statements to her mother, father, and Detective Given. The district court permitted use of all three sets of statements at trial, concluding that they were sufficiently reliable under the statute. D.D. testified regarding the digital penetration at a preliminary hearing and at trial, but she failed to confirm the facts underlying the lewdness charge. When asked at trial on cross-examination and redirect if she had spoken to anyone regarding the incident, she either responded negatively or that she could not remember.

The district court also permitted the playing of an audiotaped interview between Detective Given and Pantano regarding the incident. As part of this procedure, the court also permitted the prosecution to distribute copies of an uncertified transcript of the interview for the limited purpose of allowing the jury to read

along while the taped version was played. The transcript, however, was not admitted into evidence. After hearing final arguments and the court's instructions, the jury returned verdicts of guilty on both charges.

Prior to the reading of the verdicts following deliberations, the defense noticed that several jurors were in possession of the excluded transcript. Unsure as to how to proceed, the defense waited until after rendition of the verdicts before moving for a mistrial.

Following a hearing on the mistrial motion, the district court found that the transcript contained an admission relating to the lewdness charge that was not included in the audiotape due to a copying error. Because the portions of the tape played at trial did not contain the admission, and because the State introduced no other evidence in support of the lewdness count, the district court granted a mistrial as to the lewdness count only. The district court eventually dismissed the separate charge after the State elected not to pursue it further.

The district court imposed a term of life imprisonment with the possibility of parole in 20 years, with credit for 337 days served in local custody before sentencing. The court also ordered Pantano to serve a special sentence of lifetime supervision and register as a sex offender following release, that he pay $1,470.40 in restitution, and that he submit to genetic marker testing.

On appeal, Pantano asserts that several trial errors denied him due process and his right to confrontation under the Sixth Amendment. First, that NRS 51.385 is facially unconstitutional in light of *Crawford*. Second, that the statute is unconstitutional as applied to him because he was unable to conduct a meaningful cross-examination of D.D. Third, that the district court erred in not granting a mistrial as to the sexual assault count due to the jury's possession of the excluded transcript during deliberations. Fourth, that the prosecution committed misconduct during closing argument and in eliciting lay witness testimony regarding the legality of police subterfuge during suspect questioning. Fifth, that the district court erred in allowing the admission of prior bad acts testimony in violation of NRS 48.045(2).

## DISCUSSION

*Constitutionality of NRS 51.385*

Pantano challenges the constitutionality of NRS 51.385 facially and as applied based on the United States Supreme Court decision in *Crawford v. Washington*.[2]

---

[2]541 U.S. 36 (2004).

NRS 51.385 provides in pertinent part:

    1.  In addition to any other provision for admissibility made by statute or rule of court, a statement made by a child under the age of 10 years describing any act of sexual conduct performed with or on the child or any act of physical abuse of the child is admissible in a criminal proceeding regarding that act of sexual conduct or physical abuse if:

    (a)  The court finds, in a hearing out of the presence of the jury, that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness; and

    (b)  The child testifies at the proceeding or is unavailable or unable to testify.

    2.  In determining the trustworthiness of a statement, the court shall consider, without limitation, whether:

    (a)  The statement was spontaneous;

    (b)  The child was subjected to repetitive questioning;

    (c)  The child had a motive to fabricate;

    (d)  The child used terminology unexpected of a child of similar age; and

    (e)  The child was in a stable mental state.

As demonstrated above, this statute permits introduction of statements made by a child declarant describing sexual conduct or physical abuse as an exception to the hearsay rule if (1) a court holds a hearing outside the jury's presence to assess the circumstances surrounding the trustworthiness of such statements, (2) the child testifies at the hearing or is unavailable or unable to testify, and (3) the court finds such statements sufficiently trustworthy.

In *Bockting v. State*, relying upon the 1980 United States Supreme Court decision in *Ohio v. Roberts*,[3] this court upheld the constitutionality of NRS 51.385.[4] *Roberts* concluded that a trial court may admit hearsay statements without violence to the Confrontation Clause of the Sixth Amendment when the hearsay declarant is unavailable for cross-examination, if "(1) the statement satisfies the indicia of a 'firmly rooted' hearsay exception; or (2) the statement reflects 'particularized guarantees of trustworthiness.' "[5] In *Bockting*, this court determined that, despite the declar-

---

[3]448 U.S. 56 (1980).

[4]109 Nev. 103, 109, 847 P.2d 1364, 1368 (1993). The Ninth Circuit Court of Appeals has since granted *Bockting* habeas relief because he lacked an opportunity to cross-examine the child victim as required under the new rule stated in *Crawford*. *Bockting v. Bayer*, 399 F.3d 1010, 1012, 1022 (9th Cir. 2005), *modified*, 408 F.3d 1127, 1127 (9th Cir. 2005), *cert. granted*, 126 S. Ct. 2017 (2006).

[5]*Bockting*, 109 Nev. at 108, 847 P.2d at 1367 (quoting *Roberts*, 448 U.S. at 66).

ant's unavailability, NRS 51.385 survived constitutional muster under the second *Roberts* criterion because the statute requires district courts to determine if the " 'time, content, and circumstances of . . . [hearsay] statement[s] provide sufficient circumstantial *guarantees of trustworthiness.*' "[6]

In *Crawford v. Washington*, decided in 2004, the United States Supreme Court overturned *Roberts* with regard to testimonial hearsay.[7] Under *Crawford*, if a hearsay statement of an unavailable declarant is "testimonial" in nature, the statement is admissible only if the defendant had prior opportunity to cross-examine the declarant concerning it.[8] Therefore, under *Crawford*, when the declarant is unavailable, reliability assessments of testimonial hearsay cannot survive scrutiny under the Confrontation Clause without actual confrontation.[9]

The Court provided the following illustrations of testimonial hearsay: (1) ex parte in-court testimony, or its functional equivalent, such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or " 'similar pretrial statements that declarants would reasonably expect to be used prosecutorially' ";[10] (2) " 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions' ";[11] (3) " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' ";[12] and (4) statements made to law enforcement in the course of interrogations.[13]

NRS 51.385 implicates *Crawford*'s holding because the statute permits a district court to assess the reliability of a child-declarant's statements, rather than requiring assessment by means of cross-examination. We recognized this implication in *Flores v. State*, in which we stated that "our prior ruling in *Bockting*, holding that NRS 51.385 is constitutional under *Roberts*, cannot survive analysis under *Crawford*."[14]

[6]*Id.* at 109, 847 P.2d at 1367-68 (quoting NRS 51.385(1)(a)).

[7]541 U.S. 36.

[8]*Id.* at 68.

[9]*Id.* at 61-62; *see also Flores v. State*, 121 Nev. 706, 715, 120 P.3d 1170, 1176 (2005).

[10]*Crawford*, 541 U.S. at 51 (quoting Brief for Petitioner at 23).

[11]*Id.* at 51-52 (quoting *White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in the judgment)).

[12]*Id.* at 52 (quoting Brief for National Association of Criminal Defense Lawyers et al. at 3).

[13]*Id.*

[14]121 Nev. at 723, 120 P.3d at 1181.

Our recognition of this constitutional dilemma does not end our analysis of the instant matter. The Court in *Crawford* also stated that, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."[15] Notwithstanding D.D.'s presence and testimony at trial, Pantano asserts that several of D.D.'s nonresponsive answers during cross-examination effectively rendered her unavailable for confrontation purposes. From this, he reasons that introduction of her prior statements through the testimony of others renders NRS 51.385 unconstitutional as applied to him. We disagree.

In *Delaware v. Van Arsdall*, the United States Supreme Court stated that " 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' "[16] Further, "[w]hen a witness gives 'testimony that is marred by forgetfulness, confusion, or evasion . . . the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination.' "[17]

We conclude that Pantano had an adequate opportunity to cross-examine D.D. The fact that she answered negatively or "I don't know" when asked on cross-examination to identify to whom she spoke regarding the incident does not render the cross-examination ineffective. If anything, such testimony served to undermine her testimony and that of the surrogate witnesses.

We therefore further conclude that D.D.'s availability for cross-examination at trial defeats Pantano's "as-applied" challenge to NRS 51.385 and renders immaterial the testimonial nature of her statements to others regarding the assault. Having said this, we now take this opportunity to clarify *Flores* regarding the circumstances under which NRS 51.385 does and does not pass constitutional muster. First, subject to general rules of admissibility, a district court may properly admit a statement under this statute when a competent child witness testifies, regardless of whether the hearsay statement at issue is testimonial. Here, as noted, the child was competent to testify as to her allegations against Pantano. Second, if the hearsay statement is nontestimonial, a district court may

---

[15]541 U.S. at 60 n.9.

[16]475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

[17]*Walters v. McCormick*, 122 F.3d 1172, 1175 (9th Cir. 1997) (quoting *Fensterer*, 474 U.S. at 22).

exercise its discretion under NRS 51.385 to admit the statement, even though the child does not testify. Finally, per *Crawford* and *Flores*, when testimonial hearsay is at issue, admission of a child-victim's hearsay statement under NRS 51.385 violates confrontation rights when the victim is unavailable and the defendant has not had a prior opportunity to cross-examine.[18] Accordingly, NRS 51.385 is not facially unconstitutional in all of its applications.

## Testimonial hearsay

Despite the immateriality in this case of the testimonial nature of D.D.'s hearsay statements, we will address the issue of whether D.D.'s statements to her father were testimonial, given the likelihood that this issue will arise in future cases.[19]

Pantano asserts that D.D.'s father questioned her to elicit evidence. From this, Pantano analogizes D.D.'s responses to her father's questioning to responses given to questions by law enforcement, which *Crawford* characterized as testimonial.[20]

We reject Pantano's analogy between statements made to D.D.'s father and statements made to law enforcement. A parent questioning his or her child regarding possible sexual abuse is inquiring into the health, safety, and well-being of the child. To characterize such parental questioning as the gathering of evidence for purposes of litigation would unnecessarily and undesirably militate against a parent's ability to support and nurture a child at a time when the child most needs that support. We therefore conclude that D.D.'s statements to her father were nontestimonial in nature.

The State concedes that D.D.'s statements to Detective Given are testimonial. However, in line with the above, the district court acted within its discretion in admitting these statements because the child victim testified and the district court assessed these statements for reliability under NRS 51.385. We therefore discern no error with regard to Detective Given's testimony.

## Jury's possession of excluded transcript during deliberations

As stated, the district court restricted its mistrial order to the lewdness verdict. Pantano argues that the continued possession of the excluded transcript infected the deliberations on both charges

---

[18]*See Crawford*, 541 U.S. at 68; *Flores*, 121 Nev. at 715, 120 P.3d at 1176.

[19]Pantano takes no issue with D.D.'s hearsay statements conveyed by her mother at trial.

[20]*See Crawford*, 541 U.S. at 52.

and, accordingly, that the district court should have granted a mistrial as to the entire case. In addition to the portion of the written statement omitted from the tape, he asserts that the transcript contained excessive blanks and omissions not reflected on the tape, and improperly failed to reflect the inflection of his voice in response to several questions soliciting admissions. More specifically, Pantano asserts that the tape accurately reflects one ''I did'' response as interrogative, whereas the transcript erroneously reflects the same ''I did'' response in the declarative voice.

Under *Winiarz v. State*, ''[t]he determination of whether reversible prejudice has resulted from jurors' consideration of inadmissible evidence in a given case 'is a fact question to be determined by the trial court, and its determination will not be disturbed on appeal in the absence of a showing of an abuse of discretion.' ''[21] Relevant considerations in such an analysis include (1) '' 'whether the issue of innocence or guilt is close, [(2)] the quantity and character of the error, and [(3)] the gravity of the crime charged.' ''[22]

Because Pantano failed to include the tape or transcript of his confession in the record on appeal, we must resolve this claim of error based upon Detective Given's testimony at trial. That testimony recounted Pantano's confession to sexual assault, which confirmed D.D.'s accusations to her parents and in open court.

We conclude that the district court's limited mistrial ruling satisfies the *Winiarz* criteria. First, as noted, the evidence adduced as to the sexual assault count finds more than adequate support in D.D.'s testimony and Pantano's confession, as conveyed in Detective Given's testimony. Second, the quantity and character of the error appears slight, given that the jury heard the tape with the accurate voice inflections and was previously exposed to the excluded transcript, without objection, during the playing of the tape. Third, although the gravity of a sexual assault charge is serious indeed, it does not appear that the sexual assault verdict was in any way influenced by the lewdness admission or by any of the alleged blanks or omissions. Finally, Pantano offers no concrete theory that the lewdness confession somehow infected deliberations on both charges. Accordingly, any prejudice relating to the sexual assault verdict resulting from the jury's possession of the excluded transcript was harmless beyond a reasonable doubt.[23]

---

[21]107 Nev. 812, 814, 820 P.2d 1317, 1318 (1991) (quoting *Rowbottom v. State*, 105 Nev. 472, 486, 779 P.2d 934, 942-43 (1989)).

[22]*Id.* (quoting *Rowbottom*, 105 Nev. at 486, 779 P.2d at 943).

[23]*See id.* at 814, 820 P.2d at 1318.

Based upon this record, we conclude that the district court properly acted within its discretion in granting a mistrial as to the lewdness count only.

## Prosecutorial misconduct

### Closing arguments

Pantano argues that the prosecution made several improper statements during closing argument. The first prosecutorial statement with which Pantano takes issue was as follows: "There's no doubt he's guilty. This is a parent's worst nightmare. Make them feel better. Thank you." The State notes that the prosecutor made this statement after extensively discussing the evidence adduced against Pantano and that the prosecutor was entitled to comment on and interpret the evidence.

Regardless of any logical or rhetorical connection that the State might wish to draw during closing argument, this type of comment is always improper. With regard to the statement, "[t]here's no doubt he's guilty," the prosecutor improperly stated her personal opinion regarding Pantano's guilt.[24] Further, the two sentences following the statement of guilt were also improper because they urged the jury to convict on a basis other than the evidence. In telling the jury that the crime committed is a "parent's worst nightmare" and asking the jury to aid the parents in their suffering through conviction, the prosecution improperly appealed to juror sympathies by diverting their attention from evidence relevant to the elements necessary to sustain a conviction.[25] Making D.D.'s parents feel better is not one of these elements.

Despite the impropriety of these statements, we conclude that they were harmless beyond a reasonable doubt, given that D.D. testified to the acts underlying the alleged sexual assault and that Pantano confessed to them. Further, the district court sustained the defense's objection and instructed the jury to disregard the statements, which supplied Pantano with an adequate remedy. We do, however, admonish the prosecution to refrain from such commentary in the future.

Pantano also takes issue with the State's comments made during its concluding remarks:

---

[24]*See Barron v. State*, 105 Nev. 767, 780, 783 P.2d 444, 452 (1989).

[25]*See Sandoval v. Calderon*, 241 F.3d 765, 776 (9th Cir. 2001) (describing as improper argument urging the jury to decide the matter based upon factors other than those it is instructed to consider).

BY [State]:

Most of what he [defense counsel] just said [argued] is inadmissible, inappropriate, and should never have been said.

[Defense]: Objection, Judge. If it was inadmissible, inappropriate, Your Honor would have sua sponte stopped me.

[State]: Well—

[Defense]: That's improper on her part.

THE COURT: The Court will sustain the objection.

[Defense]: Move to strike.

BY [State]:

If I had said anything about Daniel and the Christians—

THE COURT: Granted.

[State]: Sorry?

THE COURT: Granted.

BY [State]:

If I had said anything about Daniel and the Christians, there would have been a mistrial. If I had started talking about, well, speculate about sperm on the panties, there would have been a mistrial, because you can't speculate. There was no DNA analysis done on the panties, so you can't speculate whether or not there was sperm there . . . .

The State made these statements in response to arguments by defense counsel that he felt like the proverbial "Daniel in the lions' den," in dealing with the State's case, and arguing that the State provided no toxicological evidence, *i.e.*, the presence of sperm or semen, in support of its case. Regardless of whether these arguments were "invited," we agree with Pantano's claims of error on this issue.

First, we view as improper the prosecution's rebuttal argument characterizing the defense's closing argument as inadmissible and inappropriate, because such argument improperly disparaged the defense.[26] While the prosecution may object to a defense argument perceived as improper, it may not first argue to the jury, rather than the court, that the defense's argument was improper. We conclude, however, that Pantano received the remedy for this statement when the district court sustained his objection and granted his motion to strike.

Second, the defense polemics concerning "Daniel and the Christians" and the speculation about the lack of physical evidence does not justify the prosecution's continuation of a properly

---

[26]*See Butler v. State*, 120 Nev. 879, 898, 102 P.3d 71, 84 (2004).

stricken line of argument. It is also improper to argue that the State would somehow not receive the same treatment as the defense under hypothetical situations, such as, "[i]f I had said anything about Daniel and the Christians." Needless to say, there are other more effective ways to demonstrate that the State has met its burden of proof than to complain about something that has not occurred or that there is some inherent unfairness in the rules of trial engagement that negatively affects the State's ability to secure convictions in such matters.

Despite the impropriety of the State's arguments, we conclude that they were harmless beyond a reasonable doubt, given D.D.'s testimony and Pantano's confession describing the assault.[27]

*Testimony concerning propriety of subterfuge in police questioning*

Pantano asserts that the prosecution improperly asked, and Detective Given improperly testified, that lying to a suspect was proper according to his training and this court's precedent. Pantano reasons that the prosecution improperly utilized this line of questioning to vouch for Detective Given's credibility and to convey inadmissible hearsay.

Pantano failed to object to this testimony on the grounds he now claims. His counsel merely objected to the form of the question posed to the witness, rather than to its substance, which is generally insufficient to preserve the claimed error for appellate review[28] unless it rises to plain error affecting substantial rights.[29] We conclude that this testimony does not constitute plain error and whatever error that could be ascribed to it did not affect Pantano's substantial rights in light of D.D.'s testimony and Pantano's confession. Finally, beyond misleading a suspect concerning his constitutional rights, it is proper for police authorities to use certain types of subterfuge as part of custodial and noncustodial interrogations.

---

[27]Because we have applied a harmless error analysis to these instances of prosecutorial misconduct, some prosecutors may be tempted to continue use of the arguments discredited in this opinion. We will not hesitate to refer such misconduct in the future for bar discipline.

[28]*See Merica v. State*, 87 Nev. 457, 462, 488 P.2d 1161, 1163-64 (1971) (despite the defendant's objection below, the defendant's failure to specifically object on the grounds urged on appeal precluded appellate consideration on the grounds not raised below).

[29]*See Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (under plain error review, this court examines whether an "error" occurred, whether it was "plain" or clear, and whether it affected the defendant's substantial rights); *see also Dzul v. State*, 118 Nev. 681, 688, 56 P.3d 875, 880 (2002).

## CONCLUSION

NRS 51.385 is unconstitutional under *Crawford* and *Flores* if utilized to admit testimonial hearsay when the child victim does not testify. However, NRS 51.385 remains a constitutionally valid vehicle for the admission of a child-victim's testimonial hearsay if the child testifies and is subject to cross-examination, and it also remains a valid construct for the admission of a child-victim's non-testimonial hearsay. Because the child victim testified in this case, the district court properly applied NRS 51.385 in its admission of her testimonial statements to the police investigator. Further, because the child's statements to her father regarding the sexual assault did not constitute testimonial hearsay, Pantano has failed to demonstrate error under either *Crawford* or *Flores* with regard to his testimony. Although the case was marked by several instances of prosecutorial misconduct, and while the jury was erroneously allowed to deliberate over the inadmissible transcribed statement, we conclude that these errors were harmless beyond a reasonable doubt.[30] Therefore, we affirm the district court's judgment.

GIBBONS and HARDESTY, JJ., concur.

---

[30]*See Chapman v. California*, 386 U.S. 18, 24 (1967). We have examined Pantano's other assignments of error and find them without merit.